UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

JERRY DILLINGHAM,

          Plaintiff,

vs.

J. GARCIA, et al.,

          Defendants.

1:19-cv-00461-AWI-GSA-PC

**ORDER FOR PLAINTIFF TO EITHER:**

**(1) FILE AMENDED COMPLAINT NOT EXCEEDING 25 PAGES INCLUDING EXHIBITS**

  **OR**

**(2) NOTIFY COURT OF WILLINGNESS TO PROCEED ONLY WITH THE EXCESSIVE FORCE CLAIM AGAINST DEFENDANT J. GARCIA AND THE MEDICAL CLAIMS AGAINST DEFENDANTS HARMON AND DOZER FOUND COGNIZABLE BY THE COURT**

**THIRTY-DAY DEADLINE TO EITHER FILE AMENDED COMPLAINT OR NOTIFY COURT OF WILLINGNESS TO PROCEED**

## I.   BACKGROUND

Jerry Dillingham ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* with this civil rights action pursuant to 42 U.S.C. § 1983.  On April 9, 2019, Plaintiff filed the Complaint commencing this action, which is now before the court for screening. 28 U.S.C. § 1915A.  (ECF No. 1.)

## II.      SCREENING REQUIREMENT

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1),(2).  "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted."  28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences."  Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).  To state a viable claim, Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009).  While factual allegations are accepted as true, legal conclusions are not.  Id.  The mere possibility of misconduct falls short of meeting this plausibility standard.  Id.

## III.     SUMMARY OF COMPLAINT

Plaintiff is presently incarcerated at Kern Valley State Prison (KVSP) in Delano, California, in the custody of the California Department of Corrections and Rehabilitation (CDCR), where the events at issue in the Complaint allegedly occurred.  Plaintiff names as defendants Correctional Officer (C/O) J. Garcia, C/O J. Harmon, C/O D. Dozer, Sergeant Stane, Lieutenant A. Sotelo, Warden C. Pfeiffer, S. Kernan (CDCR Secretary), R. Soto (inmate), K. Brown (psychologist), and S. Chaiken (Head psychologist) (collectively, "Defendants").

Plaintiff's allegations follow[1]:

On June 7, 2018, Plaintiff was a new arrival at KVSP and was assigned housing in Facility C Building C4-C-Sec., where dangerous Security Threat Groups (STG) – Radical white, Mexican, and Negro[2] gang members are housed.   This is the most violent yard in the most dangerous prison in California.

On June 9, 2018, two convicts came to Plaintiff's cell stating, "We are STG gang members." (Complaint, ECF No. 1 at 8 ¶ 2.)[3]  They were Negroes.   These unidentified inmates threatened to murder, rape, and attack Plaintiff when he came out of the cell if he didn't have his incarceration crime paperwork to show them.   They further stated, "There's a convict in our C-section that is going around telling other STG gang members that while he and you were at the California Substance Abuse Treatment Facility in Corcoran, California, in 2016-2017, correctional guards were sharing with other convicts your incarceration crimes paperwork and the guard showed him what you're in prison for."  (Id. at 9 ¶ 4.)  They also stated, "While we are killing, raping, beating you, KVSP guards are going to watch, because they know it's going down."  (Id. at ¶ 5.)  They said the guards in this building  -- meaning defendant Harmon -- were also telling Bldg. C4 convicts about Plaintiff's incarceration conviction.   Plaintiff was terrified.

On June 10, 2018, one mixed-race and one Negro inmate came to Plaintiff's cell threatening him with murder and sexual assault for his incarceration conviction once Plaintiff came out of the cell.   Plaintiff did not see their faces well enough to identify them.   Plaintiff was too frightened to leave his cell to pick up his pain medication at the medical building.   Plaintiff

---

[1] Plaintiff's allegations begin on June 7, 2018, the date he arrived at KVSP, and end just before the Complaint was filed on April 1, 2019.  However, Plaintiff's allegations are not in chronological order.  To clarify the order of events, the court has endeavored to document Plaintiff's allegations in chronological order.  If Plaintiff chooses to file an amended complaint he should set forth his allegations in the statement of facts in chronological order when possible.

[2] This term is used by Plaintiff throughout the Complaint.  It is not the court's term.

[3] All page numbers cited herein are those assigned by the court's CM/ECF system and not based on the Plaintiff's pagination of the Complaint.

has a mobility disability affecting his right hip, which is very painful.

On or about June 11, 2018, Plaintiff mailed defendant CDCR Secretary Kernan a memo alerting him to the threats against Plaintiff seeking protection.  Plaintiff received a supportive response.  (Exh. 8 and attached Form 22 response.)[4]

On June 12, 2018, defendant Harmon (floor custodial officer) and his partner informed Plaintiff he was paged for a medical appointment.  An hour and a half later the booth officer opened Plaintiff's cell door instructing him to report to defendant Harmon for escort.  Plaintiff asked the control booth officer why he had to be security escorted.  The officer replied, "You're a new arrival orientation inmate.  Since you haven't been seen by the Facility Classification Committee Administrators, it's policy, for your safety.  You're like on protective custody status." (Id. at 10 ¶ 13.)

Plaintiff reported to defendant Harmon in his red paper orientation jumpsuit, lime green disability ADA mobility impaired vest, with his mobility aid auxiliary cane issued for the 57-year-old Plaintiff.  Plaintiff asked why it took so long to get out of the cell for this medical appointment.  Harmon replied, "You will find out soon enough."  (Id. ¶ 16.)  Plaintiff alerted defendant Harmon about his safety concerns because of threats.  Plaintiff asked Harmon to protect him by placing waist chain handcuffs on Plaintiff and providing a safety escort out of the building, through the yard, and to the medical building.  Defendant Harmon said he wasn't escorting Plaintiff in handcuffs anywhere.  He told Plaintiff to find a safe way to the medical building on his own and to "get out my office."  (Id. at 11 ¶ 19.)  Plaintiff felt that this angry outburst by a white officer treated him, a Negro, differently than others (White, Mexican non-classified branded [sic], labeled non-classified branded, not an identifiable class group like Plaintiff, similarly situated.)

Fearfully, Plaintiff left the building at about 9:50am.  To his left Plaintiff saw nine or more unhandcuffed STGs of different races, extremist convicts housed in Building C4-C-Sec.,

---

[4] Plaintiff refers to exhibits throughout the Complaint, but the court did not receive any exhibits attached to or submitted with the Complaint.

4

returning from the solitary punitive security gym yard.  Defendant J. Garcia was singlehandedly and recklessly escorting them as they lined up against the building with defendant J. Garcia following behind them.  Using his cane, Plaintiff veered far to the right to the administration building to seek protection for his medical appointment.  Defendant J. Garcia solicited a "C-over-C"[5] STG gang member to attack Plaintiff from behind when Plaintiff was not looking.  Defendant J. Garcia stood by and watched sadistically, directing his co-conspirator STG solicited hit man to leave the building wall and then sadistically watched the assailant creep ten or more steps directly toward Plaintiff for 25 seconds, unbeknownst to Plaintiff.  STG convict Ramon Soto struck Plaintiff with his fist eight to ten times, struck Plaintiff on the back of his head with chopping blows to Plaintiff's right arm and body while Plaintiff's back was turned.  Soto spun Plaintiff around so he was facing Soto.  Plaintiff shielded his face with his left hand trying to keep his balance with the cane in his left hand.  Plaintiff was unable to shield his face with his right arm and Soto struck him on the chin and yanked Plaintiff to the ground by grabbing Plaintiff's right bicep, breaking it and causing extreme pain.  Plaintiff, partially unconscious, lay on the ground and defendant J. Garcia allowed his co-conspirator STG convict Soto to kick Plaintiff three times, striking his body, head, and right arm.  Only then was Garcia satisfied with his solicited abuse victimization of Plaintiff.  While Plaintiff was on the ground defendant Garcia threw a chemical pepper spray grenade at Plaintiff, which exploded on Plaintiff's right lower leg causing 2nd and 3rd degree disfiguring chemical burns six to seven inches long and about eight inches wide.

Then, defendant J. Garcia called off his co-conspirator hit man Soto.  During this attempted murder, Plaintiff did not resist any officer, break any prison rules, hit his attacker, or strike him with his cane.  Plaintiff never provided testimony that he defended himself from Soto's attack, though he testified to this in an excessive force video and administrative hearing for a fraudulent cover-up Rules Violation report.  Emergency medical staff responded with a

---

[5] According to Plaintiff, a "C-over-C" convict, designated by the Warden at a classification administrator's committee hearing, has perpetrated three or more rules violations of which the convict has been found guilty during a six-month period.  Plaintiff alleges that a C-over-C convict poses a substantial risk to the safety of other inmates and security of the institution and is restricted from programming with non-C-status inmates.

wheelchair and defendant J. Garcia picked Plaintiff up by his right bicep sadistically and threw Plaintiff into the wheelchair causing Plaintiff to cry out in excruciating pain!  Defendant Garcia mockingly exclaimed, "Dillingham wanted protection, look at him now," as Garcia and his partners humiliated Plaintiff, laughing.  (Id. at 14-15 ¶ 44.)

After Plaintiff was attacked he was wheeled to the prison infirmary where the nurse told him that his attacker possibly caused him a severe right bicep rupture, an injury where the tendon is detached from the bone.  Later that day another nurse examined Plaintiff and made the same diagnosis of Plaintiff's disfigured right bicep, which caused Plaintiff level 9-11 debilitating pain.

When Plaintiff regained consciousness, he felt "irregulare [sic] anus symptoms and uncertain confusing PREA[6] circumstances, i.e., unwanted potential sexual contact," triggering his terror of contracting AIDS.  (Id. at 22 ¶ 101.)  It wasn't until about 4:30pm that an officer finally summoned medical care, after Plaintiff had alerted Officer Willis [not a defendant] at 2:30pm that he was suicidal and homicidal.  On June 28, 2018, Plaintiff alerted Psychologist Beach [not a defendant] about the circumstances of the confusing uncertain PREA incident he experienced.  Plaintiff was given a PREA video interview after he requested a copy and asked to make it a public record.

[In the Complaint, Plaintiff discusses one of his other cases pending at this court, case 1:18-cv-00579-NONE-EPG (PC); Dillingham v. Garcia, in which he named F. Garcia as the lead defendant.  Plaintiff alleges that F. Garcia is a correctional officer at the California Substance Abuse Treatment Facility and is related to defendant J. Garcia.  Plaintiff claims that J. Garcia and F. Garcia conspired together to murder Plaintiff, and they carried out their co-conspiracy when inmate Ramon Soto attacked Plaintiff.  Plaintiff alleges that F. Garcia threatened to cause Plaintiff's murder if Plaintiff continued to expose him to litigation and grievances, telling Plaintiff, "No matter where you're at, I can get to you [and] it's going to hurt."  (Id. at 15:54.)  However, F. Garcia is not named as a defendant in the present case.]

On June 27, 2018, defendants Sergeant Stane and Lieutenant Sotelo summoned Plaintiff

---

[6] Prison Rape Elimination Act

to their office to discuss Plaintiff's alerting of custody staff about convicts threatening Plaintiff's life.  "But for, Defendant J. Harmon, Bldg. C4 assigned convicts spreding [*sic*] Plaintiff's incarceration crime notoriety et al."  (Id. at 16 ¶ 59.)  Plaintiff asked to have his single-cell status restored and to be placed in Protective Administrative Segregation for Plaintiff's protection.

Plaintiff alerted defendants Stane and Sotelo about his history of being assigned single-cell status for his mental health, his safety, and others' safety after he was attacked by a cellmate on January 18, 2013 [at Salinas Valley State Prison], for being labeled a snitch.  Mental health doctors strongly warned the CDCR administrator and recommended that Plaintiff remain single-celled for diagnosis of his psychosis.  Plaintiff's PTSD had become worse.  Plaintiff heard voices telling him to kill his celly before the celly kills him.  On August 8, 2017, R.J. Donovan prison revoked Plaintiff's single-cell status.  Since then Plaintiff has refused to accept all cellmates brought to his assigned cell by officers.

Defendant Stane told Plaintiff, "Since you cannot identify the Building C4 convicts threatening to kill or rape you, I and defendant Lt.  Sotelo are sending you right back to Lower C-Facility, Bldg. C4 – A section cell 103.  Provide your own safety.  Once you find out the names or cell numbers of the STG gang members that have threatened to murder and rape you, then send them to me."  (Id. at 17-18 ¶¶ 65, 66.)  Unbeknownst to Plaintiff, after Plaintiff had disclosed information during his interview, Defendants Stane, Sotelo, Harmon, and Dozer conspired to deprive Plaintiff of safety, to exacerbate Plaintiff's PTSD, flash backs, and panic attacks.

As defendant Dozer was escorting Plaintiff back to Facility C and he got closer to cell 103, Plaintiff saw a 290-pound big black convict that defendants Stane, Sotelo, and Harmon had sadistically, retaliatorily, conspiratorially, diabolically rushed to put in Plaintiff's cell while Plaintiff was at the administration office with Stane, Sotelo, and Dozer.  This triggered Plaintiff's terror, paranoia, and racing thoughts of past traumatic episodes.  Plaintiff told Dozer that the cellmate was triggering homicidal ideations [*sic*] in him, inducing his suicidal intentions, and Plaintiff asked Dozer to summon medical suicide prevention care.  Plaintiff panicked and lay down on the dayroom floor, curled up in a fetal position.  Defendant Dozer said, "We're not having none of that, you're going in cell 103 to get what your kind got coming."  (Id. at 19 ¶ 74.)

Dozer grabbed Plaintiff, ordered the control booth officer to open cell 103, and threw Plaintiff into the cell.  Plaintiff was terrified.  Subsequently the convict, M. Williams, was let out to medication call.  Plaintiff came out of the cell and told defendant Harmon that he was homicidal and suicidal, hearing voices, and was going to kill his cellmate, then kill himself.  Defendant Harmon's face got really red and his eyes bulged.  He told Plaintiff that he was not getting away this time and threatened to use his pepper spray on Plaintiff.  Plaintiff expected to be escorted to the shower or medical building to await suicide prevention medical care, but defendant Harmon treated Plaintiff differently than the others and handcuffed him, using excessive force, and dragged him back into cell 103 with convict Williams.  This was a discriminatory hate crime, deviation from protocol, facilitating Plaintiff's suicidal and homicidal tendencies.  Once back in the cell with convict Williams, Plaintiff had hallucinations and the voices he heard warned him that custody put the cellmate in the cell to try and kill Plaintiff again, "egging me on to put a bag over his head, to smother him to death when he goes to sleep."  (Id. at 21 ¶¶ 92, 93.)  Plaintiff could not think straight, couldn't determine if it was the hallucination or whether convict William was looking at him like he was going to rape and kill Plaintiff.  Convict Williams kept asking Plaintiff that frightening red flag question, "What are you in prison for?"  (Id. at 21 ¶94.)

The forced double-celling and presence of convict William triggered Plaintiff's paranoia and PTSD caused by past trauma from when correctional employees at Salinas Valley State Prison disclosed that Plaintiff was a snitch, causing an in-cell stabbing on January 18, 2013.  Also, On March 5, 2017, [before Plaintiff arrived at KVSP], Corcoran staff caused solicited out-of-cell attempted murder, strangulation, and beating.  On April 2, 2017, Corcoran prison staff caused a convict assault-and-battery attack on Plaintiff.  Then on June 12, 2018, KVSP staff defendants Harmon, J. Garcia (and F. Garcia [sic]), and convict Soto caused a solicited attempted murder attack upon Plaintiff.  These five past traumatic victimizations caused PTSD flashbacks, panic attacks, black outs, and loss of consciousness.

On July 10, 2018, Plaintiff submitted a timely staff misconduct complaint log number KVSP-0-18-02112 to the KVSP Appeals Coordinator's Office, notifying the State about his claim against defendant Harmon, defendant Garcia, and inmate Soto's actions.  Due to not

receiving a response, Plaintiff re-submitted a copy on July 22, 2018, with the original submission date.  On July 27, 2018, contrary to the IAO[7] prison officials' rulebook, Plaintiff's complaint was cancelled at the Second Level because of a time constraint violation.  On February 27, 2019, KVSP completed the inquiry.  Based on Plaintiff's personal knowledge and information from defendant Kernan's agents and employees, when a 602 complaint is cancelled, but a claim therein is characterized as a Staff Complaint, the IAO prison official notifies the inmate, "Due to the nature of the screen out grievance issue, it has been referred to the Hiring Authority (i.e., defendant Warden Pfieffer) to be heard processed through a separate Confidential Inquiry Process into the Staff Misconduct, prison officials lose any authority to act on the subject of the cancelled screen out grievance."  (Id. at 14 ¶ 48.)  Thus, the claim is deemed exhausted (i.e., regular process unavailable) when it is characterized as a Staff Complaint.

Plaintiff also submitted a staff misconduct complaint log number KVSP-0-18-01900 against defendants Stane, Sotelo, Harmon, and Dozer.  It was heard at the amended second level with a disposition finding:  "J. Harmon, Dozer are guilty, liable for one of more of staff complaint complain [sic] of injuries, claims, because they did violate CDCR Policy, i.e., excessive force; Cal.Govt. Code § 844.6(a) & 845.6 Failure to summon medical care." (Id. at 22-23 ¶ 106.)

As of the date of filing this suit, April 9, 2019, Plaintiff's tendon, which was severed from his bicep during the attempted murder, is still causing unbearable chronic level 9 pain.  Plaintiff also has disabling pain from attacks on his right shoulder, right bicep or back arm, right trap muscle, right side of neck, right forearm, and right side of his back muscle.  The severe pain disrupts Plaintiff's major life activities.  Plaintiff is not a STG gang member or a gang member in general.

Plaintiff requests as relief a declaratory judgment, injunctive relief, transfer to the Atascadero psychiatric State Hospital, a permanent "S suffix Single-Cell classification, mental health care, appointment of a guardian *ad litem* to prosecute this case, compensatory damages, punitive damages, attorney's fees, and costs of suit.

---

[7] Plaintiff may be referring to the CDCR's Office of Internal Affairs (OIA).

## IV.  PLAINTIFF'S CLAIMS

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

"[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Graham v. Connor, 490 U.S. 386, 393-94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)); see also Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 618 (1979); Hall v. City of Los Angeles, 697 F.3d 1059, 1068 (9th Cir. 2012); Crowley v. Nevada, 678 F.3d 730, 734 (9th Cir. 2012); Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006). "To the extent that the violation of a state law amounts to the deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, Section 1983 offers no redress." Id.

To state a claim under § 1983, a plaintiff must allege that (1) the defendant acted under color of state law and (2) the defendant deprived him or her of rights secured by the Constitution or federal law. Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); see also Marsh v. Cnty. of San Diego, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" Preschooler II v. Clark Cnty. Sch. Bd. of Trs., 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." Preschooler II, 479 F.3d at 1183 (quoting Johnson, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." Arnold v. Int'l Bus. Mach. Corp.,

637 F.2d 1350, 1355 (9th Cir. 1981); see also Harper v. City of Los Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008).

### A.      Official and Individual Capacities

Plaintiff brings claims against some of the Defendants in their official capacities and others in their individual capacities.  Plaintiff may not bring a suit for damages against Defendants in their official capacities.  "The Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and state officials in their official capacities." Aholelei v. Dept. of Public Safety, 488 F.3d 1144, 1147 (9th Cir. 2007) (citations omitted). However, the Eleventh Amendment does not bar suits seeking damages against state officials in their personal capacities, Hafer v. Melo, 502 U.S. 21, 30 (1991); Porter v. Jones, 319 F.3d 483, 491 (9th Cir. 2003), or suits for declaratory or injunctive relief brought against state officials in their official capacies, Austin v. State Indus. Ins. System, 939 F.2d 676, 680 fn.2 (9th Cir. 1991). Therefore, Plaintiff fails to state a claim for damages against Defendants in their official capacities, however,  he is not barred by the Eleventh Amendment from seeking injunctive or declaratory relief against Defendants in their official capacities, or from seeking money damages from Defendants in their individual capacities.

### B.      Supervisory Liability and Personal Participation

Plaintiff names some defendants who hold supervisory positions, such as the Warden, the Secretary of the CDCR, and the Head Chief Psychologist.  Plaintiff is advised that "[l]iability under [§] 1983 arises only upon a showing of personal participation by the defendant.  A supervisor is only liable for the constitutional violations of . . . subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them.  There is no *respondeat superior* liability under [§] 1983." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (citations omitted).  Plaintiff must demonstrate that each defendant, through his or her own individual actions, violated Plaintiff's constitutional rights.  Iqbal, 556 U.S. at 676; Corales v. Bennett, 567 F.3d 554, 570 (9th Cir. 2009).  Therefore, to the extent that Plaintiff seeks to impose liability upon any of the defendants in their supervisory capacity, Plaintiff fails to state a claim.

Under section 1983, Plaintiff must demonstrate that each defendant *personally* participated in the deprivation of his rights.  Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002) (emphasis added).  Plaintiff must demonstrate that each defendant, through his or her own individual actions, violated Plaintiff's constitutional rights.  Iqbal, 556 U.S. at 676-77.

In the Complaint, Plaintiff fails to allege facts showing that Warden, the Secretary of the CDCR, the Head Chief Psychologist, or Psychologist K. Brown personally acted against him.  Plaintiff cannot state a claim against any of these Defendants unless he demonstrates in his allegations that each of them, identified by name, personally acted or failed to act, violating Plaintiff's rights.

Plaintiff shall be granted an opportunity to amend the Complaint to cure this deficiency.

**C.**   **Defendant Soto -- Inmate**

In order for individual defendants to be held personally liable under 42 U.S.C. § 1983, they must have acted under the color of state law.   Jensen v. Lane Cty., 222 F.3d 570 (9th Cir. 2000).   "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'"  Paeste v. Gov't of Guam, 798 F.3d 1228, 1238 (9th Cir. 2015) (citing West v. Atkins, 487 U.S. 42, 49, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988) (quoting United States v. Classic, 313 U.S. 299, 326, 61 S.Ct. 1031, 85 L.Ed. 1368 (1941)).  In order to be considered "state action," for purposes of §  1983 . . . the court must find a sufficiently close nexus between the state and the private actor so that the action of the latter may be fairly treated as that of the State itself.. 42 U.S.C.A. § 1983.  Jensen v. Lane Cty., 222 F.3d 570 (9th Cir. 2000).

Plaintiff names inmate Ramon Soto as a defendant in this action alleging that Soto assaulted him.  Plaintiff cannot succeed in stating a claim against Soto in this § 1983 case because Soto was not a state actor, and his assault against Plaintiff was not a state action.  Therefore, Ramon Soto must be dismissed as a defendant from this case.

///

///

12

### D.     F. Garcia

Plaintiff alleges in the Complaint that F. Garcia, the lead defendant in Plaintiff's other pending civil rights case 1:18-cv-00579-NONE-EPG (PC), <u>Dillingham v. Garcia</u>, conspired with defendant J. Garcia, defendant in the present case, to murder Plaintiff.   F. Garcia is not a defendant in the present case.  Plaintiff cannot state a claim in the present case against a defendant named in another case unless he also names the defendant in the present case and makes sufficient allegations against the defendant.  Plaintiff's Complaint must be complete in itself without reference to a prior pleading.  Local Rule 220.

If Plaintiff files an amended complaint and wishes to include F. Garcia as a defendant in the amended complaint, he must name F. Garcia as a defendant in the amended complaint and bring allegations and claims against F. Garcia without reference to his other pending case.  The amended complaint must be complete in itself.

### E.     Exhibits

Plaintiff refers to exhibits in his Complaint, but no exhibits were attached to the Complaint or otherwise submitted with the Complaint.  Because Plaintiff has not attached the exhibits, they have not been incorporated by reference into the Complaint.  Fed. R. Civ. P. 10(c).  Therefore, the Court's screening is based upon Plaintiff's allegations in the Complaint without reference to any exhibits.

While they are permissible, Fed. R. Civ. P. 10(c), exhibits are not necessary in the federal system of notice pleading, Fed. R. Civ. P. 8(a).  The Court strongly suggests to Plaintiff that exhibits should not be submitted where (1) they serve only to confuse the record and burden the Court, or (2) they are intended as future evidence.  If this action reaches a juncture at which the submission of evidence is appropriate and necessary (e.g., summary judgment or trial), Plaintiff will have the opportunity at that time to submit his evidence.

### F.     Excessive Force -- Eighth Amendment Claim

Plaintiff brings a claim for excessive force under the Eighth Amendment.  "The objective component of an Eighth Amendment claim is . . . contextual and responsive to contemporary standards of decency."  <u>Hudson v. McMillian</u>, 503 U.S. 1, 8 (1992) (internal quotation marks and

citations omitted).   The malicious and sadistic use of force to cause harm always violates contemporary standards of decency, regardless of whether or not significant injury is evident.  Id. at 9; see also Oliver v. Keller, 289 F.3d 623, 628 (9th Cir. 2002) (Eighth Amendment excessive force standard examines *de minimis* uses of force, not *de minimis* injuries)).   "[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  Id. at 7. "In determining whether the use of force was wanton and unnecessary, it may also be proper to evaluate the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response."  Id.  (internal quotation marks and citations omitted). "The absence of serious injury is . . . relevant to the Eighth Amendment inquiry, but does not end it."  Id.

Plaintiff alleges that defendant Harmon "used unnecessary unreasonable excessive force" when he handcuffed Plaintiff and dragged him back to his cell.  (Id. at 21:2-3.)  This allegation fails to state an excessive force claim because it uses conclusory language.  Plaintiff has not alleged *facts* demonstrating exactly what happened, why he believes he was treated with excessive force, and what injuries he suffered.  Therefore, Plaintiff fails to state an excessive force claim against defendant Harmon for handcuffing him and dragging him back to his cell.

Plaintiff alleges that defendant Dozer grabbed Plaintiff, ordered the control booth officer to open cell 103, and threw Plaintiff into the cell.  Plaintiff may be able to state a claim for excessive force against defendant Dozer if Plaintiff provides more information.  As stated, Plaintiff's allegations against defendant Dozer are insufficient for the court to determine whether Dozer's actions rose to the level of excessive force.  As with defendant Harmon, if Plaintiff chooses to amend the complaint, Plaintiff must allege *facts* demonstrating exactly what happened, why he believes he was treated with excessive force, and what injuries he suffered. Therefore, Plaintiff fails to state an excessive force claim against defendant Dozer.

///

However, the court finds that Plaintiff states a cognizable excessive force claim against defendant J. Garcia for throwing a pepper spray grenade at Plaintiff, which exploded on Plaintiff's right lower leg causing second or third-degree burns six to seven inches long and about eight inches wide.  (Id. at 13 ¶¶ 35, 36.)

Based on the foregoing, the court finds that Plaintiff states a claim for use of excessive force against J. Garcia, but not against any of the other Defendants.

### G.      Americans with Disabilities Act (ADA) Claim

To the extent that Plaintiff seeks to bring an ADA claim, Plaintiff fails to state a claim. "To establish a violation of Title II of the ADA, a plaintiff must show that (1) [he] is a qualified individual with a disability; (2) [he] was excluded from participation in or otherwise discriminated against with regard to a public entity's services, programs, or activities; and (3) such exclusion or discrimination was by reason of [his] disability." Lovell v. Chandler, 303 F.3d 1039, 1052 (9th Cir. 2002).  Monetary damages are not available under Title II of the ADA absent a showing of discriminatory intent. See Ferguson v. City of Phoenix, 157 F.3d 668, 674 (9th Cir. 1998). To show discriminatory intent, a plaintiff must establish deliberate indifference by the public entity.  Duvall v. County of Kitsap, 260 F.3d 1124, 1138 (9th Cir. 2001).

Plaintiff has sufficiently established that he is disabled within the definition of the ADA. However, Plaintiff has not identified a specific service, program, or activity he was denied based upon that disability.  Nor has he alleged facts showing discriminatory intent in excluding Plaintiff from participation in a program, service, or activity.  Therefore, Plaintiff fails to state a claim for violation of the ADA.

### H.      Mental Health Care – Eighth Amendment Claim

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'"  Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)).  The two-part test for deliberate indifference requires the plaintiff to show (1) "'a serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need

was deliberately indifferent." Jett, 439 F.3d at 1096 (quoting McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (*en banc*) (internal quotations omitted)).  Deliberate indifference is shown by "a purposeful act or failure to respond to a prisoner's pain or possible medical need, and harm caused by the indifference." Id. (citing McGuckin, 974 F.2d at 1060).  Deliberate indifference may be manifested "when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." Id.

This principle extends to an inmate's mental-health-care needs.  Smith v. Jenkins, 919 F.2d 90, 92–93 (8th Cir. 1990).  Deliberate indifference by prison personnel to an inmate's serious mental-health-care-needs violates the inmate's Eighth Amendment right to be free from cruel and unusual punishment.  Id.  Deliberate indifference is shown by "a purposeful act or failure to respond to a prisoner's pain or possible medical need, and harm caused by the indifference." Jett, 439 F.3d at 1096 (citing McGuckin, 974 F.2d at 1060).  In order to state a claim for violation of the Eighth Amendment, a plaintiff must allege sufficient facts to support a claim that the named defendants "[knew] of and disregard[ed] an excessive risk to [plaintiff's] health . . . ." Farmer v. Brennan, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).

In applying this standard, the Ninth Circuit has held that before it can be said that a prisoner's civil rights have been abridged, "the indifference to his medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir.1980) (citing Estelle, 429 U.S. at 105–06).

Plaintiff alleges that defendants Harmon and Dozer knew that he was struggling with his mental health, feeling fearful, and having thoughts about causing harm to himself and others, but neither of them summoned mental health providers for evaluation and treatment of Plaintiff. Plaintiff alleges that he was visibly disturbed and asking for help throughout the time Defendants attempted to place him in a cell with a cellmate.  Plaintiff clearly alerted the Defendants that he was suicidal and was going to kill his cellmate and then himself.  Plaintiff claims he suffered immense mental distress that would be apparent to a lay person.  Under Plaintiff's allegations,

the court finds that Plaintiff was unconstitutionally denied adequate mental health care despite a showing that such care was needed.

Therefore, the court finds that Plaintiff states a medical claim against defendants Harmon and Dozer.

## I.      Equal Protection Clause

The Equal Protection Clause requires the State to treat all similarly situated people equally. See City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). This does not mean, however, that all prisoners must receive identical treatment and resources. See Cruz v. Beto, 405 U.S. 319, 322 n. 2 (1972); Ward v. Walsh, 1 F.3d 873, 880 (9th Cir. 1993); Allen v. Toombs, 827 F.2d 563, 568–69 (9th Cir. 1987).

"To prevail on an Equal Protection claim brought under § 1983, Plaintiff must allege facts plausibly showing that '"the defendants acted with an intent or purpose to discriminate against [them] based upon membership in a protected class,"'" (citing see Thornton v. City of St. Helens, 425 F.3d 1158, 1166 (9th Cir. 2005) (quoting Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001)), or that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose, Engquist v. Oregon Department of Agr., 553 U.S. 591, 601-02, 128 S.Ct. 2146 (2008); Village of Willowbrook v. Olech, 528 U.S. 562, 564, 120 S.Ct. 1073 (2000); Lazy Y Ranch Ltd. v. Behrens, 546 F.3d 580, 592 (9th Cir. 2008); North Pacifica LLC v. City of Pacifica, 526 F.3d 478, 486 (9th Cir. 2008).

Plaintiff alleges that defendant Harmon did not follow protocol as understood by Plaintiff for treating a mental health inmate because Harmon did not confine Plaintiff somewhere to await suicide prevention medical care, but instead handcuffed him and dragged him back into his cell. Plaintiff claims that Harmon "treated Plaintiff differently than others similarly situated, by using unnecessary unreasonable excessive force, handcuffed Plaintiff dragging [*sic*], manhandling Plaintiff back into the cell 103 with convict Williams."  (ECF No. 1 at 21:1-4.)  However, Plaintiff has not alleged facts demonstrating that he was intentionally discriminated against on the basis of his membership in a protected class, or that he was intentionally treated differently

than other similarly situated inmates without a rational relationship to a legitimate state purpose. Therefore, Plaintiff fails to state a claim for relief for violation of his right to equal protection.

### J.   **Failure to Protect**

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement.  Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006).  Although prison conditions may be restrictive and harsh, prison officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety.  Farmer, 511 U.S. at 832-33 (internal citations and quotations omitted).  Prison officials have a duty to take reasonable steps to protect inmates from physical abuse.  Id. at 833; Hearns v. Terhune, 413 F.3d 1036, 1040 (9th Cir. 2005).  The failure of prison officials to protect inmates from attacks by other inmates may rise to the level of an Eighth Amendment violation where prison officials know of and disregard a substantial risk of serious harm to the plaintiff.  E.g., Farmer, 511 U.S. at 847; Hearns, 413 F.3d at 1040.

To establish a violation of this duty, the prisoner must establish that prison officials were "deliberately indifferent to a serious threat to the inmate's safety."  Farmer, 511 U.S. at 834.  The question under the Eighth Amendment is whether prison officials, acting with deliberate indifference, exposed a prisoner to a sufficiently "substantial risk of serious harm" to his future health. Id. at 843 (citing Helling v. McKinney, 509 U.S. 25, 35 (1993)).  The Supreme Court has explained that "deliberate indifference entails something more than mere negligence . . . [but] something less than acts or omissions for the very purpose of causing harm or with the knowledge that harm will result."  Farmer, 511 U.S. at 835. The Court defined this "deliberate indifference" standard as equal to "recklessness," in which "a person disregards a risk of harm of which he is aware."  Id. at 836-37.

The deliberate indifference standard involves both an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious."  Id. at 834. Second, subjectively, the prison official must "know of and disregard an excessive risk to inmate health or safety."  Id. at 837; Anderson v. County of Kern, 45 F.3d 1310, 1313 (9th Cir. 1995). To prove knowledge of the risk, however, the prisoner may rely on circumstantial evidence; in

fact, the very obviousness of the risk may be sufficient to establish knowledge.  <u>Farmer</u>, 511 U.S. at 842; <u>Wallis v. Baldwin</u>, 70 F.3d 1074, 1077 (9th Cir. 1995).

Plaintiff claims that defendant J. Garcia directed inmate Soto to attack Plaintiff while Garcia watched the attack and failed to intervene.  However, Plaintiff uses vague and conclusory language, alleging that "Defendant J. Garcia solicited a 'C-over-C'[8] STG gang member to attack Plaintiff," "stood by and watched sadistically," and "direct[ed] his co-conspirator STG solicited hit man to leave the building wall" and attack Plaintiff.  Plaintiff fails to allege *facts* demonstrating what he saw, heard, and otherwise personally experienced, and how he knew that J. Garcia was working with Soto as a co-conspirator.  Plaintiff contradicts himself when he expresses his surprise at being attacked from behind, but also describes the scene where defendant Garcia directed Soto to leave the side of the building and Garcia watched Soto sadistically for 25 seconds as Soto crept up on Plaintiff from behind.  Based on the above, the court finds that Plaintiff fails to state a failure-to-protect claim against defendant J. Garcia.

Plaintiff also alleges that defendants Harmon, Sgt. Stane, Lt. Sotelo, and Secretary Kernan knew he needed protection from inmates who were threatening him because of his conviction, but failed to protect him.  Here again, Plaintiff fails to allege *facts* demonstrating that any of these defendants actually believed that he was at substantial risk of serious harm and yet disregarded the risk, causing Plaintiff to be harmed.  Plaintiff has alleged that defendants Stane and Sotelo sent him away and told him to come back if he had names of inmates who threatened him, which demonstrates that they were not concerned and may not have believed he was actually at substantial risk of harm.  Accordingly, the court finds that Plaintiff fails to state a failure-to-protect claim against defendants Harmon, Sotelo, Stane, or Kernan.

Plaintiff also alleges that defendant Dozer failed to protect him from being double-celled with a large cellmate who caused Plaintiff great fear and anxiety.  Defendant Dozer escorted Plaintiff to his cell and despite Plaintiff lying on the floor in a fetal position, returned him to the

---

[8] According to Plaintiff, a C-over-C convict, designated by the Warden at a classification administrator's committee hearing, has perpetrated three or more rules violations of which the convict has been found guilty during a six-month period.  A C-over-C convict poses a substantial risk to the safety of other inmates and security of the institution and is restricted from programming with non-C-status inmates.

cell without calling for mental health providers to examine him.  Plaintiff fails to state a failure-to-protect claim against defendant Dozer because there are no facts showing that Plaintiff was at risk of physical harm sharing a cell, and in fact all the cellmate did was ask Plaintiff why he was in prison.  This allegation, and Plaintiff's allegations of his panic and terror while imagining he was in danger from the cellmate are not sufficient to state a failure-to-protect claim against defendant Dozer.  Therefore, the court finds that Plaintiff fails to state a failure-to-protect claim against defendant Dozer for Dozer's act of escorting him to the cell with the new cellmate and insisting that he stay in the cell.

Plaintiff shall be granted leave to file an amended complaint to correct the deficiencies in these claims found by the court.

### K.      Prison Appeals Process

Due process claims require that the plaintiff suffer "a deprivation of a constitutionally protected liberty or property interest."  Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist., 149 F.3d 971, 982 (9th Cir.1998).  "[I]nmates lack a separate constitutional entitlement to a specific prison grievance procedure."  Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (no liberty interest in processing of appeals because no entitlement to a specific grievance procedure), (citing Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988)).  "[A prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates."  Azeez v. DeRobertis, 568 F. Supp. 8, 10 (N.D. Ill. 1982) accord Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993); see also Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) (existence of grievance procedure confers no liberty interest on prisoner).  "Hence, it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the Fourteenth Amendment."  Azeez, 568 F. Supp. at 10; Spencer v. Moore, 638 F. Supp. 315, 316 (E.D. Mo. 1986).

To the extent that Plaintiff seeks to state a claim based on any of the Defendants' handling or responding to his inmate appeals, Plaintiff cannot state a claim.  Actions in reviewing a prisoner's administrative appeal generally cannot serve as the basis for liability in a section 1983 action.  Buckley, 997 F.2d at 495.  The argument that anyone who knows about a violation of the

Constitution, and fails to cure it, has violated the Constitution himself is not correct. "Only persons who cause or participate in the violations are responsible. Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation." Greeno v. Daley, 414 F.3d 645, 656-57 (7th Cir. 2005) accord George, 507 F.3d at 609-10; Reed v. McBride, 178 F.3d 849, 851-52 (7th Cir. 1999); Vance v. Peters, 97 F.3d 987, 992-93 (7th Cir. 1996).; Haney v. Htay, No. 1:16-CV-00310-AWI-SKO-PC, 2017 WL 698318, at *4–5 (E.D. Cal. 2017).

Thus, any allegation that any of the Defendants failed to properly handle or process Plaintiff's prison appeals, without more, fails to state a cognizable claim.

### L.   **False Reports and Cover Up**

Plaintiff alleges that defendant J. Garcia made false reports to conceal an Eighth Amendment violation.

This allegation, even if true, does not raise a constitutional claim because there is no due process right to be free from false disciplinary charges. The falsification of a disciplinary report does not state a standalone constitutional claim. Canovas v. California Dept. of Corrections, 2:14-cv-2004 KJN P, 2014 WL 5699750, n.2 (E.D. Cal. 2014); see e.g., Lee v. Whitten, 2:12-cv-2104 GEB KJN P, 2012 WL 4468420, *4 (E.D. Cal. 2012). There is no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest. Sprouse v. Babcock, 870 F.2d 450, 452 (8th Cir. 1989); Freeman v. Rideout, 808 F.2d 949, 951 (2d Cir. 1986). "Specifically, the fact that a prisoner may have been innocent of disciplinary charges brought against him and incorrectly held in administrative segregation does not raise a due process issue. The Constitution demands due process, not error-free decision-making." Jones v. Woodward, 2015 WL 1014257, *2 (E.D. Cal. 2015) (citing Ricker v. Leapley, 25 F.3d 1406, 1410 (8th Cir. 1994); McCrae v. Hankins, 720 F.2d 863, 868 (5th Cir. 1983)). Therefore, Plaintiff has no protected liberty interest against false information being reported against him.

To the extent that Plaintiff attempts to raise a cover-up claim, it is premature. Allegations that officials engaged in a cover-up state a constitutional claim only if the cover-up deprived a plaintiff of his right of access to courts by causing him to fail to obtain redress for the

constitutional violation that was the subject of the cover-up.   Dell v. Espinoza, No. 116CV1769MJSPC, 2017 WL 531893, at *6–7 (E.D. Cal. Feb. 7, 2017) (citing see Karim-Panahi v. Los Angeles Police Dept., 839 F.2d 621, 625 (9th Cir. 1988) (cover-up "allegations may state a federally cognizable claim provided that defendants' actions can be causally connected to a failure to succeed in the present lawsuit.")); Rose v. City of Los Angeles, 814 F. Supp. 878, 881 (C.D. Cal. 1993).

A cover-up claim is premature when, as here, Plaintiff's action seeking redress for the underlying constitutional violations remains pending.   See Karim-Panahi, 839 F.2d at 625 (claim alleging police cover-up of misconduct was premature when action challenging misconduct was pending); Rose, 814 F. Supp. at 881 ("Because the ultimate resolution of the present suit remains in doubt, [p]laintiff's cover-up claim is not ripe for judicial consideration.")

**M.   Conspiracy**

Plaintiff alleges that some of the Defendants conspired with each other to violate Plaintiff's rights.   Conspiracy under § 1983 requires proof of "an agreement or meeting of the minds to violate constitutional rights," Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2002) (internal quotation marks omitted) (quoting United Steelworkers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1540-41 (9th Cir. 1989)), and that an "'actual deprivation of his constitutional rights resulted from the alleged conspiracy,'" Hart v. Parks, 450 F.3d 1059, 1071 (9th Cir. 2006) (quoting Woodrum v. Woodward County, 866 F.2d 1121, 1126 (9th Cir. 1989) ).   "'To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy.'" Franklin, 312 F.3d at 441 (quoting United Steelworkers, 865 F.2d at 1541).   A plaintiff must allege facts with sufficient particularity to show an agreement or a meeting of the minds to violate the plaintiff's constitutional rights. Miller v. Cal. Dep't of Soc. Servs., 355 F.3d 1172, 1177 n.3 (9th Cir. 2004) (citing Woodrum, 866 F.2d at 1126).   Mere statement that defendants "conspired" or acted "in retaliation" is not sufficient to state a claim.   "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555).

The Ninth Circuit requires a plaintiff alleging a conspiracy to violate civil rights to "state specific facts to support the existence of the claimed conspiracy."  Olsen v. Idaho State Bd. of Med., 363 F.3d 916, 929 (9th Cir. 2004) (citation and internal quotation marks omitted) (discussing conspiracy claim under § 1985); Burns v. County of King, 883 F.2d 819, 821 (9th Cir. 1989) ("To state a claim for conspiracy to violate one's constitutional rights under section 1983, the plaintiff must state specific facts to support the existence of the claimed conspiracy." (citation omitted)).

Plaintiff's allegations of conspiracy under § 1983 fail to state a claim because his allegations are conclusory and merely speculative.  Though he uses phrases like "conspired," "agreed to aid and abet," and "came to a meeting of minds," he does not provide any specific facts showing that any of the Defendants had an agreement to violate his constitutional rights. There is absolutely no indication of any agreement between any of the Defendants.  Therefore, Plaintiff fails to state a claim for conspiracy.

### N.   **State Law Claims**

Plaintiff brings claims for assault and battery, hate crime, and violations of the Bane Act, California Government Codes §§ 844.6(a) & 845.6, California Penal Code § 442.6, California Civil Code § 52.1, and the CDCR Operations Manual.  These are all state law claims.  Plaintiff is informed that violation of state tort law, state regulations, rules and policies of the CDCR, or other state law is not sufficient to state a claim for relief under § 1983.  Section 1983 does not provide a cause of action for violations of state law.  See Galen v. Cnty. of Los Angeles, 477 F.3d 652, 662 (9th Cir. 2007).  To state a claim under § 1983, there must be a deprivation of federal constitutional or statutory rights.  See Paul v. Davis, 424 U.S. 693 (1976); also see Buckley v. City of Redding, 66 F.3d 188, 190 (9th Cir. 1995); Gonzaga University v. Doe, 536 U.S. 273, 279 (2002).  Although the court may exercise supplemental jurisdiction over state law claims, Plaintiff must first have a cognizable claim for relief under federal law.  See 28 U.S.C. § 1367.

Plaintiff alleges in the Complaint that he has complied with the Government Claims Act, which requires exhaustion of state law claims with California's Victim Compensation and

Government Claims Board.  <u>Shirk v. Vista Unified Sch. Dist.</u>, 42 Cal.4th 201, 208-09 (Cal. 2007); <u>State v. Superior Court of Kings Cnty. (Bodde)</u>, 32 Cal.4th 1234, 1239 (Cal. 2004); <u>Mabe v. San Bernardino Cnty. Dep't of Pub. Soc. Servs.</u>, 237 F.3d 1101, 1111 (9th Cir. 2001); <u>Mangold v. California Pub. Utils. Comm'n</u>, 67 F.3d 1470, 1477 (9th Cir. 1995); <u>Karim-Panahi</u>, 839 F.2d at 627.  Plaintiff is required to specifically allege compliance in his complaint.  <u>Id.</u>  Plaintiff states in the Complaint that he presented a timely written claim mailed on December 11, 2018, for claims against defendants J. Garcia, J. Harmon, and Soto.  (ECF No. 1 at 1:18-20.)  Plaintiff also states that he presented a late claim for claims against defendants J. Harmon and D. Dozer.  (<u>Id.</u>)

Because Plaintiff has not submitted copies of his written claims, or evidence of when they were presented to the Government Claims Board, what facts were presented, or the response to Plaintiff's claims, the court cannot determine if Plaintiff has complied with the Government Claims Act and if so, for which of his state law claims brought in this § 1983 Complaint. Therefore, at this juncture, the court shall dismiss Plaintiff's state law claims for Plaintiff's failure to appropriately allege compliance, with leave to amend.  To proceed with any of the state law claims in this case, Plaintiff must submit evidence that he specifically complied with the written claim requirement.  To sufficiently present a claim, complainant must include "[t]he date, place and other circumstances of the occurrence or transaction which gave rise to the claim asserted," and "[a] general description of the indebtedness, obligation, injury, damage or loss incurred so far as it may be known at the time of the presentation of the claim." Cal. Gov't Code § 910; <u>City of W. Sacramento, California v. R & L Bus. Mgmt.</u>, No. 218CV00900WBSEFB, 2020 WL 820148, at *1 (E.D. Cal. Feb. 19, 2020) (quoting § 910).  The factual basis for recovery in the complaint must be "fairly reflected in the written claim."  <u>Id.</u> (quoting <u>Watson v. State</u>, 21 Cal. App. 4th 836, 838 (2d Dist. 1993) (sustaining demurrer where legal theory for recovery in written claim differed from that in the complaint); <u>Donohue v. State of California</u>, 178 Cal. App. 3d 795, 797 (1986) (same)).

### O.   <u>Request for Guardian Ad Litem</u>

Under Federal Rule of Civil Procedure 17(c)(2), "[t]he court must appoint a guardian *ad litem* -- or issue another appropriate order -- to protect a minor or incompetent person who is

unrepresented in an action."  "Although the court has broad discretion and need not appoint a guardian *ad litem* if it determines the person is or can be otherwise adequately protected, it is under a legal obligation to consider whether the person is adequately protected.  United States v. 30.64 Acres of Land, More or Less, Situated in Klickitat Cty., State of Wash., 795 F.2d 796, 805 (9th Cir. 1986).

The Ninth Circuit has held that when "substantial evidence" exists regarding the mental incompetence of a *pro se* litigant, the district court should conduct a hearing to determine competence so that a guardian *ad litem* may be appointed if appropriate. Allen v. Calderon, 408 F.3d 1150, 1153 (9th Cir. 2005); Krain v. Smallwood, 880 F.2d 1119, 1121 (9th Cir. 1989). The Ninth Circuit has not clearly stated what constitutes "substantial evidence" of incompetence warranting such a hearing.  See Hoang Minh Tran v. Gore, No. 10cv464-GPC (DHB), 2013 WL 1625418, at *3 (S.D. Cal. Apr. 15, 2013). However, the Ninth Circuit has indicated that sworn declarations from the allegedly incompetent litigant, sworn declarations or letters from treating psychiatrists or psychologists, and medical records may be considered in this regard.  See Allen, 408 F.3d at 1152-54.  Such evidence must speak to the court's concern as to whether the person in question is able to meaningfully take part in the proceedings.  See AT&T Mobility, LLC v. Yeager, 143 F.Supp.3d 1042, 1050 (E.D. Cal. 2015) (citing In re Christina B., 19 Cal.App.4th 1441, 1450 (1993)).  The purpose of Rule 17(c) is to protect an incompetent person's interests in prosecuting or defending a lawsuit.  See Gardner ex rel. Gardner v. Parson, 874 F.2d 131, 140 (3d Cir. 1989)  Once the court determines that a *pro se* litigant is incompetent, the court generally should appoint a guardian *ad litem* under Rule 17(c), but the Rule does not make such an appointment mandatory.  If another order would sufficiently protect the incompetent person's interests in the litigation in lieu of a guardian, the court may enter such an order. See 30.64 Acres, 795 F.2d at 805; Adelman ex rel. Adelman v. Graves, 747 F.2d 986, 989 (5th Cir. 1984)

Here, Plaintiff has not submitted substantial evidence of incompetence that speaks to the court's concern whether he is able to meaningfully take part in the proceedings for this case. Plaintiff asserts that he is 57 years old, illiterate, slow to learn and comprehend, has a low TABE score, has panic attacks, has flashbacks, and is in the disability placement program.  Neither a

history of mental illness nor a previous determination of incompetency is sufficiently indicative of a plaintiff's current competency status, and bare allegations of incompetency, unsupported by current medical evaluations made by medical professionals, do not constitute meaningful evidence of incompetency.  See Jurgens v. Dudendorf, 2:14-cv-02780 KJM DAD, 2015 WL 4910536, at *3-4 (E.D. Cal. 2015).  Plaintiff provides no letter from a mental health professional or other "verifiable evidence" of his incompetence to trigger this court's duty of inquiry.  See Ferrelli v. River Manor Health Care Center, 323 F.3d 196, 201-02 (2d Cir. 2003).  Plaintiff provides insufficient evidence to support a finding that "substantial evidence" exists regarding his mental incompetence

Also, thus far, Plaintiff has shown an ability to articulate his claims and litigate this case despite his mental health issues.  Based on the record in this case, Plaintiff appears able to adequately describe the claims he is attempting to assert, although Plaintiff allegedly received assistance.  He has also filed a motion for a temporary restraining order, objections to Judge Austin's findings and recommendations, and a motion for extension of time in this case. Furthermore, Plaintiff filed a civil rights case in 1999, which he litigated for more than two years until defendants prevailed on their motion for summary judgment, and he is currently proceeding with three civil rights cases filed in 2018 and 2019, without counsel or a guardian *ad litem*.

Accordingly, the court finds that in the absence of verifiable evidence of incompetence, there is no substantial question regarding Plaintiff's competence and therefore no duty of inquiry. Saddozai v. Spencer, No. 18-04511 BLF (PR), 2019 WL 6838701, at *2 (N.D. Cal. Dec. 16, 2019), reconsideration denied, (N.D. Cal. Apr. 16, 2020) (citing see Allen, 408 F.3d at 1152; Ferrelli, 323 F.3d at 201-02).  Plaintiff does not warrant appointment of a guardian *ad litem* under Rule 17(c), and his request shall be denied.  However, Plaintiff  is advised that he may renew his request at a later stage of the proceedings.

## P.    Relief Requested

Besides monetary damages, Plaintiff requests injunctive relief, declaratory relief, and attorney's fees.  Plaintiff also requests to be given single-cell status, be transferred to Atascadero State Hospital, and be provided mental health care.

Any award of equitable relief is governed by the Prison Litigation Reform Act, which provides in relevant part:

"The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief."  18 U.S.C. § 3626(a)(1)(A).

Neither single-cell status, mental health care, nor a transfer to Atascadero State Prison would remedy the past violation of Plaintiff's constitutional rights, and therefore is not narrowly drawn to correct the alleged past violations.  Based on the nature of the claims at issue in this action, which involve past conduct, Plaintiff is not entitled to injunctive relief and is therefore confined to seeking money damages for the violations of his federal rights.

As for declaratory relief, such request should be denied because it is subsumed by Plaintiff's damages claim. See Rhodes v. Robinson, 408 F.3d 559, 565-66 n.8 (9th Cir. 2005) (because claim for damages entails determination of whether officers' alleged conduct violated plaintiff's rights, the separate request for declaratory relief is subsumed by damages action); see also Fitzpatrick v. Gates, No. CV 00-4191-GAF (AJWx), 2001 WL 630534, at *5 (C.D. Cal. Apr. 18, 2001) ("Where a plaintiff seeks damages or relief for an alleged constitutional injury that has already occurred declaratory relief generally is inappropriate[.]")

As for Plaintiff's request for attorney's fees,  "[i]n any action or proceeding to enforce a provision of section[] 1983. . . , the court, in its discretion, may allow the prevailing party. . . reasonable attorney's fees. . . ."  42 U.S.C. § 1988(b).  However, Plaintiff's contention that he is entitled to attorney's fees if he prevails in this case is without merit.  Plaintiff is representing himself in this action.  Because Plaintiff is not represented by an attorney, he is not entitled to recover attorney's fees if he prevails.  See Friedman v. Arizona, 912 F.2d 328, 333 n.2 (9th Cir. 1990), superseded by statute as stated in Warsoldier v. Woodford, 418 F.3d 989 (9th Cir. 2005); Gonzalez v. Kangas, 814 F.2d 1411, 1412 (9th Cir. 1987); see also Rickley v. Cnty. of Los Angeles, 654 F.3d 950, 954 (9th Cir. 2011) ("The Court accordingly adopted a per se rule, categorically precluding an award of attorney's fees under § 1988 to a pro se attorney-plaintiff.")

Therefore, Plaintiff is not entitled to a declaration, injunctive relief, or attorney's fees if he prevails in this action.

## V.   CONCLUSION AND ORDER

For the reasons set forth above, the court finds that Plaintiff states cognizable claims in the Complaint against defendant C/O J. Garcia for use of excessive force, and against defendants Harmon and Dozer for inadequate medical care, in violation of the Eighth Amendment. However, Plaintiff fails to state any other claims against any of the Defendants upon which relief may be granted under § 1983.  Plaintiff shall be granted leave to file an amended complaint to attempt to cure the deficiencies in his other claims, outlined above, if he wishes.

Plaintiff shall be required to <u>either</u> file an amended complaint <u>or</u> notify the court of his willingness to proceed only on the cognizable claims found by the court against C/O J. Garcia, C/O J. Harmon and C/O D. Dozer.  Should Plaintiff choose to proceed only on the excessive force and medical claims found by the court, the court shall initiate service upon defendants J. Garcia, Harmon, and Dozer.

Under Rule 15(a) of the Federal Rules of Civil Procedure, "[t]he court should freely give leave to amend when justice so requires."  The court will provide Plaintiff with an opportunity to file an amended complaint attempting to cure the deficiencies identified above.  Plaintiff is granted leave to file an amended complaint within thirty days.  <u>Noll v. Carlson</u>, 809 F.2d 1446, 1448-49 (9th Cir. 1987).

If Plaintiff chooses to amend the complaint, the amended complaint should be brief, Fed. R. Civ. P. 8(a), but must state what each named defendant did that led to the deprivation of Plaintiff's constitutional or other federal rights.  <u>Iqbal</u>, 556 U.S. at 678; <u>Jones</u>, 297 F.3d at 934. Plaintiff must set forth "sufficient factual matter . . . to 'state a claim that is plausible on its face.'" <u>Id.</u> at 678 (quoting <u>Twombly</u>, 550 U.S. at 555).  There is no *respondeat superior* liability, and each defendant is only liable for his or her own misconduct.  <u>Iqbal</u>, 556 U.S. at 677.  Plaintiff must demonstrate that each defendant *personally* participated in the deprivation of his rights.  <u>Jones</u>, 297 F.3d at 934 (emphasis added).  Plaintiff should note that although he has been given the opportunity to amend, it is not for the purpose of adding new defendants for unrelated issues.

Plaintiff should also note that he has not been granted leave to add allegations of events occurring after the initiation of this suit on April 9, 2019.  Also, 25 pages is more than sufficient for the amended complaint, including exhibits.  If Plaintiff files an amended complaint that exceeds 25 pages including exhibits, the amended complaint shall be stricken for violation of the court's order.

Plaintiff is advised that an amended complaint supercedes the original complaint, <u>Lacey v. Maricopa County</u>, 693 F.3d 896, 907 n.1 (9th Cir. 2012), and it must be complete in itself without reference to the prior or superceded pleading.  Local Rule 220.  Once an amended complaint is filed, the original complaint no longer serves any function in the case.  Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged.  The amended complaint should be clearly and boldly titled "First Amended Complaint," refer to the appropriate case number, and be an original signed under penalty of perjury.

Based on the foregoing, **IT IS HEREBY ORDERED** that:

1.  Plaintiff's request for appointment of a guardian *ad litem* is DENIED, without prejudice;

2.  The court has found that Plaintiff states cognizable claims in the Complaint against defendant J. Garcia for use of excessive force, and against defendants Harmon and Dozer for inadequate medical care, both in violation of the Eighth Amendment, but no other claims against any of the Defendants;

3.  The Clerk's Office shall send Plaintiff a civil rights complaint form;

4.  Within **thirty (30) days** from the date of service of this order, Plaintiff shall either

    (1)  File a First Amended Complaint, not exceeding 25 pages including exhibits;

    Or

    (2)  Notify the court that he does not wish to file an amended complaint and is instead willing to proceed only with the excessive force claim against

defendant J. Garcia and the medical claims against defendants Harmon and Dozer found cognizable by the court, dismissing all other claims and defendants;

5.   If Plaintiff chooses to amend the complaint, he shall caption the amended complaint "First Amended Complaint" and refer to the case number 1:19-cv-00461-AWI-GSA-PC;

6.   Plaintiff's amended complaint may not exceed 25 pages including exhibits, and if Plaintiff files an amended complaint exceeding 25 pages including exhibits, the amended complaint shall be stricken for violation of the court's order; and

7.   Plaintiff's failure to comply with this order shall result in a recommendation that this case be dismissed.

IT IS SO ORDERED.

Dated:   __**May 30, 2020**__                  _____ **/s/ Gary S. Austin**
                                                        UNITED STATES MAGISTRATE JUDGE