UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JERRY DILLINGHAM,<br><br>      Plaintiff,<br><br>      vs.<br><br>J. GARCIA, et al.,<br><br>      Defendants. | 1:19-cv-00461-AWI-GSA-PC<br><br>**AMENDED FINDINGS AND RECOMMENATIONS, RECOMMENDING THAT THIS CASE PROCEED AGAINST DEFENDANT J. GARCIA FOR USE OF EXCESSIVE FORCE, FAILURE TO PROTECT PLAINTIFFF AND CONSPIRACY, AND DISMISSING ALL OTHER CLAIMS AND DEFENDANTS FOR FAILURE TO STATE A CLAIM**<br><br>**OBJECTIONS DUE WITHIN FOURTEEN DAYS** |

## I.   BACKGROUND

Jerry Dillingham ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* with this civil rights action pursuant to 42 U.S.C. § 1983.  On April 9, 2019, Plaintiff filed the Complaint commencing this action.  (ECF No. 1.)  On June 1, 2020, the court issued a screening order requiring Plaintiff to either (1) file an amended complaint not exceeding 25 pages, or (2) notify the court of his willingness to proceed only with the excessive force claim against defendant J. Garcia and the medical claims against defendants Harmon and Dozer found cognizable by the court.  (ECF No. 19.)  On August 27, 2020, Plaintiff filed the First Amended

Complaint, which was 41 pages in length.  (ECF No. 31.)  On August 30, 2020, the court issued an order striking the First Amended Complaint for Plaintiff's failure to comply with the screening order and granted Plaintiff 30 days in which to file a Second Amended Complaint not exceeding 25 pages.  (ECF No. 32.)  On September 8, 2020, Plaintiff filed the Second Amended Complaint. (ECF No. 34.)   On February 10, 2021, the court issued findings and recommendations, recommending that this case proceed only against defendant J. Garcia for excessive force and failure to protect Plaintiff.  (ECF No. 43.)

The court has found in this amended findings and recommendations that Plaintiff also states a claim in the Second Amended Complaint against defendant J. Garcia for conspiracy. Accordingly, the court now issues amended findings and recommendations.  28 U.S.C. § 1915A.

## II.     SCREENING REQUIREMENT

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted."  28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences."  Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).  To state a viable claim, Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service,

572 F.3d 962, 969 (9th Cir. 2009).   While factual allegations are accepted as true, legal conclusions are not.  Id.   The mere possibility of misconduct falls short of meeting this plausibility standard.  Id.

### III.   SUMMARY OF SECOND AMENDED COMPLAINT

Plaintiff is presently incarcerated at Kern Valley State Prison (KVSP) in Delano, California, in the custody of the California Department of Corrections and Rehabilitation (CDCR), where the events at issue in the Second Amended Complaint allegedly occurred. Plaintiff names as defendants Correctional Officer (C/O) J. Garcia, C/O J. Harmon, C/O D. Dozer, Sergeant B. Stane, Lieutenant A. Sotelo, Warden C. Pfeiffer, C/O F. Garcia (father of C/O J. Garcia), S. Kernan (CDCR Secretary), R. Soto (inmate), and Ralph Diaz (CDCR Secretary) (collectively, "Defendants").

Plaintiff's allegations follow:

Plaintiff is a mentally impaired ADA inmate.  On June 7, 2018, Plaintiff was a new arrival at KVSP and was assigned housing in Facility C Building C4-C-Sec., where dangerous Security Threat Groups (STG) – Radical white, Mexican, and Negro gang members -- are housed.  This is the most violent yard in the most dangerous prison in California.

On June 8, 2018, two convicts came to Plaintiff's cell stating, "We are STG gang members." (ECF No. 34 at 3:15.)[1]  They were Negroes and told Plaintiff there is a convict in our C-section, R. Soto, who is going around telling other gang members that Plaintiff is in prison for a sensitive commitment offense, and  Soto was carrying out an agreement with defendant F. Garcia to cause Plaintiff's murder.  The two convicts said that Soto was telling gang members that he and Plaintiff were both at the California Substance Abuse Treatment Facility (SATF) in Corcoran, California, in 2016-2017, and an officer, F. Garcia, gave Soto and other convicts Plaintiff's private information CDCR 128-G, which recorded Plaintiff's sensitive commitment

---

[1] All page numbers cited herein are those assigned by the court's CM/ECF system and not based on the Plaintiff's pagination of the Complaint.

offense.   One of the two gang members said they would murder and rape Plaintiff if he did not show them his CDCR 128-G Classification Chrono when he came out of the cell.     The gang member said that prison guards are going to watch because the officers know it's going down because Officer J. Harmon is telling Building 4 convicts about Plaintiff's sensitive offense. Plaintiff was terrified because F. Garcia gave his co-conspirator the weapon to cause Plaintiff's murder between February 28, 2017 and March 3, 2017.  F. Garcia was alerted to Plaintiff's "SCO" offense [sex offender], which gives Plaintiff an increased risk of being targeted for murder by prison guards and convicts.  Gang members came to Plaintiff's cell and threatened to murder Plaintiff because of his sensitive commitment offense.

On June 12, 2018, defendant Harmon and the control officer informed Plaintiff he was paged for a medical appointment.  Around 9:40am, the booth officer opened Plaintiff's cell door for the appointment.  Plaintiff was informed that morning by Harmon, prior to inmates being released for medication pill line, that there could not be any Facility C inmate recreation yard program after Building C4 inmates returned from walking to pill line, i.e., no inmate movement out of their cells.  So Plaintiff felt he could leave his cell and receive protection.

 Plaintiff reported to defendant Harmon in his red paper orientation jumpsuit, lime green mobility impaired disability vest, and mobility aid cane.  Plaintiff asked why it took so long to get out of the cell for this medical appointment.  Harmon replied, "You will find out soon enough." (ECF No. 34 at 10:18-19.)  Plaintiff alerted defendant Harmon about his safety concerns because of the threats.  Plaintiff asked Harmon to protect him by placing waist chain handcuffs on Plaintiff and providing a safety escort out of the building, through the yard, and to Sgt. Stane's program administration building for placement in a secure holding cage.  Defendant was to call Sgt. Stane ahead of time to clear the yard of all inmates before Harmon escorted Plaintiff to the Program Office.  But defendant Harmon said he wasn't escorting Plaintiff in handcuffs anywhere. He told Plaintiff to find a safe way to the medical building on his own and to "get out my office." (ECF No. 34 at 11:8.)   Plaintiff felt that that he, a Negro, was being treated differently than others similarly situated, that is, non-classified (white, Mexican) sensitive commitment offender gang members.

Upon exiting Building C-4, Plaintiff was excluded from participation in security protection services. Plaintiff saw defendant J. Garcia escorting ten or more unhandcuffed radical extremist STG gang members of different races, returning from allegedly "C-over-C"[2] punitive solitary recreation. Defendant J. Garcia beckoned to an unhandcuffed "C-over-C" STG gang member, defendant Soto. Defendant J. Garcia stood by and watched sadistically as he and Soto identified Plaintiff. Plaintiff heard J. Garcia and Soto express agreement that Plaintiff is the inmate for whom J. Garcia solicited Soto to conspire to murder Plaintiff and intimidate a witness in furtherance with an agreement with F. Garcia. Plaintiff heard J. Garcia direct his co-conspirator Soto to attack Plaintiff, a 57-year old disabled dependent painfully hobbling through the recreation yard trying to reach safety at the Program Office a hundred or more yards away before defendant Soto could reach him. Soto struck Plaintiff from behind. Plaintiff heard Soto during the attack exclaim, "This is from F. Garcia his family J. Garcia, i.e. son/brother for Plaintiff being an informant, snitch, sensitive commitment offense offender." (ECF No. 34 at 12:7-9.)

Soto severed Plaintiff's right bicep tendon causing excruciating pain from fist blows down on Plaintiff's right arm, his bicep seemingly rendered paralyzed. Soto bludgeoned Plaintiff across the back of the neck severely injuring C3-C7 cervical discs and crushing down on Plaintiff's spinal cord column causing severe pain, affecting Plaintiff's daily mobility. Plaintiff suffered three severe tears on his right shoulder, causing severe pain. J. Garcia caused Soto to reinjure Plaintiff's right hip, causing severe pain. All Plaintiff could do was hold on to his cane to prevent Soto from snatching it out of Plaintiff's left hand, as Soto exclaimed, "Let go of the cane, Ni**er, so I can beat you to death with it." (ECF No. 34 at 13:1.) Plaintiff was struck on the chin and yanked by his bicep to the ground while trying to shield his face with his left arm. At no time did Plaintiff strike the assailant with his cane or his fist, even as defendant J. Garcia told Soto to pummel Plaintiff.

///

---

[2] According to Plaintiff, "C-over-C" convicts pose a substantial risk to the safety of other inmates and are restricted from having physical contact with non-C-status inmates.

Defendant J. Garcia finally called off the attack.  Plaintiff lay prone on the ground partially unconscious.  Defendant J. Garcia sadistically threw a chemical pepper spray grenade at Plaintiff which exploded on the middle part of Plaintiff's leg causing second and third degree burns six to seven inches long causing extreme pain for over two months.  Subsequently, defendant J. Garcia pushed his alarm.  Emergency medical staff responded with a wheelchair. Defendant J. Garcia picked Plaintiff up by the right bicep, sadistically throwing Plaintiff into the wheelchair causing excruciating pain.  J. Garcia mockingly exclaimed, "Dillingham wanted protection, look at him now," and Garcia and his Mexican responding guards humiliated Plaintiff, laughing.  (ECF No. 34 at 13:25-26.)

Plaintiff was taken by wheelchair to the C Facility infirmary where two nurses told Plaintiff, "The attack trauma to your right bicep possibly is a severed bicep tendon rupture, being why it's disfigured in comparison to your left bicep." (ECF No. 34 at 14:1-4.)  Plaintiff told the nurses about the attack against him and complained of severe pain.  Neither of the nurses wrote down anything on their individual CDCR 7219 Medical Reports of Injury regarding Plaintiff's injury and pain.  Plaintiff thought either the nurses were intimidated by the numerous prison guards camped out in the infirmary, or it was business as usual.  The nurses only cleaned Plaintiff's burn on his left leg and put a bandage on it.  They refused to summon prison emergency medical care for Plaintiff's serious injuries.  California Corrections Health Care Services failed to surgically repair Plaintiff's bicep, three tears in his right shoulder, or C3-C7 ruptured cervical discs.  In retaliation for Plaintiff's litigation against F. Garcia, J. Garcia conspired with his father and brother.  J. Garcia's fraudulent evidence report record charged Plaintiff with battery on an inmate with a deadly weapon, CDC 115, resulting in 365 days of retaliation and false imprisonment.

When Plaintiff was released from Ad-Seg he told Warden Pfeiffer that his sensitive commitment offense was the cause of R. Soto's attempted murder of Plaintiff and gang member threats to murder Plaintiff.  But Warden Pfeiffer disregarded it.

C Facility prison guards, defendants J. Harmon, J. Garcia, et al., conspired with C Facility gang members disclosing to them Plaintiff's sensitive commitment offense, facilitating Plaintiff's

murder.  Thus, Plaintiff would be in imminent substantial danger of being targeted again for great bodily injury if Plaintiff remained at KVSP, or was sent back to Facility C.

Defendants C. Pfeiffer and Ad-seg counselor Gaery [not a defendant] started collaborating and told the recorder staff not to record any archives about what Plaintiff just testified to in a CDCR 128-G Institutional Classification Hearing chrono.  Warden Pfeiffer disregarded the aforementioned information and ordered Plaintiff rehoused back on Facility Lower C Building C-4, double-celled.  Convicts began to make terrorist threats to murder Plaintiff once he came out of the cell for the same reasons complained of to defendants J. Harmon and Pfeiffer.

On June 27, 2018, Plaintiff alerted defendants Sgt. B. Stane and Facility C Program Administrative staff about unidentifiable STG gang members housed in Building C4-C-Sec still making terrorist threats to murder Plaintiff because of his sensitive commitment offense.  Plaintiff alerted defendants Sgt. Stane and Pfeiffer that double-celling Plaintiff is a risk to Plaintiff's safety and mental health welfare based on his severe PTSD diagnosed by Psychologist R. Price.  Panic, anxiety and paranoia, dangerous attacks, audio hallucination flashbacks of prior January 18, 2013 in cell (covered up by SVSP staff), stabbing victimization of Plaintiff which initially caused Psychologist Sanders to order Plaintiff single-celled in February 2013, coupled with the assailant exclaiming, "This is for being a snitch, informant, sensitive commitment offense offender." (ECF No. 34 at 16:12.)  Plaintiff was single-celled from February 2013 until August 8, 2017, when Psychologist Crawle ill-advisedly revoked Plaintiff's single cell status.  Plaintiff further alerted defendants Sgt. Stane and Pfeiffer that ever since his single-cell "S" suffix was taken, Plaintiff has refused to willingly accept all cells the state has assigned, but for past trauma on January 18, 2013, PTSD flashbacks resulting in the state filing over 8 or more CDC 115 Rules Violation Reports taking 90 days of good time credits for each, which Plaintiff cannot get back, thus extending his sentence.  Subsequently, Sgt. Stane responded to Plaintiff's imminent danger risk, directed defendant J. Harmon to conspire and cause a conflict in Building C4 in Plaintiff's assigned cell while Plaintiff was being interviewed by Sgt. Stane in the Facility C program administration building, unbeknownst to Plaintiff.

Treating Plaintiff's class group differently than other similarly situated, non-classified sensitive commitment offense offenders: white, Mexican, et al., gang members. Defendant Stane further responded to being alerted, ordered Plaintiff to remain double-celled in Building C4 and provide Plaintiff's own safety, security, and protection, and once Plaintiff gets the names and cell numbers of the radical extremist STG SNY gang members making terrorist threats to murder Plaintiff on sight, then provide Sgt. Stane and Pfeiffer their names and cell numbers. Thus, Plaintiff refused protective custody.

Defendant Stane's response inflicted severe emotional, psychological mental distress, anxiety, terror, mental pain, and paranoia in Plaintiff. As defendant D. Dozer was forcing Plaintiff back to imminent danger Building C4, as Plaintiff got closer to his assigned cell, Plaintiff saw there was a 280-pound big Black inmate in the cell. The sight of the convict and circumstances of how Sgt. Stane and Harmon caused the cell move caused Plaintiff to think they were once again facilitating to cause Plaintiff's murder and intentionally inflicting pain and terror. Plaintiff alerted defendants Dozer and Harmon that the convict in the cell was triggering a PTSD post traumatic flash back, feeling panic and terror, triggering homicidal ideations toward the convict in the cell. Plaintiff was suicidal and became visibly distressed, requested both defendants to summon mental health providers for evaluation and treatment. Defendant Dozer responded to Plaintiff's distress and exclaimed, as Plaintiff lay in a panic fetal position on the floor of the day room, "We're not having none of that, you're going in cell 103 to get what your kind got coming," i.e., sensitive commitment offense offender. (ECF No. 34 at 18:3-4.) Defendant Harmon responded by exclaiming, "You're not getting away this time," intimating to Plaintiff that defendant Harmon was an active manipulator of the June 12, 2018 attempted murder incident, referencing his malfeasance based on Plaintiff's personal knowledge. (ECF No. 34 at 18:7.)

Both defendants responded to Plaintiff's plight by intentionally treating Plaintiff's class group, sensitive commitment offense offender (or Plaintiff's class of one) different than others similarly situated (i.e., non-sensitive commitment offense inmates exclaiming suicidal medical mental-health care needs. Non-Black, White, Mexican, STG SNY gang member) based on

Plaintiff's regretful membership in protected class groups. Defendants humiliatingly dragged Plaintiff into the cell, using unreasonable force, had the door closed inflicting emotional distress, terror of instant and unexpected death, and mental anguish.

Plaintiff was discriminated against because no one summoned a mental health provider for suicide evaluation or other treatment for Plaintiff. Plaintiff was intentionally abandoned without a rational relationship to a legitimate state purpose. Thus, Plaintiff was excluded from participation in and access to state custodial suicide protection, prevention, safety, security policy protocol benefits and activities, based on Plaintiff's mental impairment disabilities, membership in a sensitive commitment offense group, color, African American Blackfoot Indian race, pro se, illiterate, and Armstrong v. Davis class group status.

While in the cell, inmate Williams questioned Plaintiff about his incarceration crime and induced a severe PTSD panic attack, black out, and loss of consciousness. Upon gaining consciousness, Plaintiff felt irregular anus pain symptoms (PREA)[3] from potential sexual contact. This PREA incident inflicted severe mental pain, humiliation, fear of contracting AIDS, recurring nightmares and images of unwanted sexual acts. On June 28, 2018, Plaintiff alerted Psychologist Beach about the traumatic PREA incident. Defendants failed to protect Plaintiff from cruel and unusual punishment by providing other inmates with Plaintiff's commitment offense information, soliciting co-conspirators and agreeing to conspire to murder Plaintiff. These actions were by defendant F. Garcia and co-conspirators R. Soto and J. Garcia.

Defendants Sgt. Stane, Warden Pfeiffer, and Harmon caused risks to Plaintiff by double-celling him. Defendants Dozer and Harmon failed to summon medical and mental health providers for suicide evaluation, out of retaliation. Defendants F. Garcia, R. Soto, and J. Garcia violated the hate crime statute Penal Code § 422.6(a), Bane Federal Civil Rights Statute § 52.1, and the Eighth and Fourteenth Amendments.

Plaintiff seeks monetary damages including punitive damages, injunctive relief, costs of suit, attorney fees, and appointment of counsel.

---

[3] Prison Rape Elimination Act.

## IV.     PLAINTIFF'S CLAIMS

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'"   Graham v. Connor, 490 U.S. 386, 393-94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)); see also Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 618 (1979); Hall v. City of Los Angeles, 697 F.3d 1059, 1068 (9th Cir. 2012); Crowley v. Nevada, 678 F.3d 730, 734 (9th Cir. 2012); Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006).  "To the extent that the violation of a state law amounts to the deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, Section 1983 offers no redress."  Id.

To state a claim under § 1983, a plaintiff must allege that (1) the defendant acted under color of state law and (2) the defendant deprived him or her of rights secured by the Constitution or federal law.  Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); see also Marsh v. Cnty. of San Diego, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law").  A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'"  Preschooler II v. Clark Cnty. Sch. Bd. of Trs., 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)).  "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms."  Preschooler II, 479 F.3d at 1183 (quoting Johnson, 588 F.2d at 743).  This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause."  Arnold v. Int'l Bus. Mach. Corp.,

637 F.2d 1350, 1355 (9th Cir. 1981); <u>see</u> <u>also</u> <u>Harper v. City of Los Angeles</u>, 533 F.3d 1010, 1026 (9th Cir. 2008).

**A.      <u>Defendant Soto and Other Inmates</u>**

In order for individual defendants to be held personally liable under 42 U.S.C. § 1983, they must have acted under the color of state law.   <u>Jensen v. Lane Cty.</u>, 222 F.3d 570 (9th Cir. 2000).   "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" <u>Paeste v. Gov't of Guam</u>, 798 F.3d 1228, 1238 (9th Cir. 2015) (citing <u>West v. Atkins</u>, 487 U.S. 42, 49, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988) (quoting <u>United States v. Classic</u>, 313 U.S. 299, 326, 61 S.Ct. 1031, 85 L.Ed. 1368 (1941)).   In order to be considered "state action," for purposes of § 1983 . . . the court must find a sufficiently close nexus between the state and the private actor so that the action of the latter may be fairly treated as that of the State itself.   42 U.S.C. § 1983.   <u>Jensen</u>, 222 F.3d 570.

Plaintiff names inmate Ramon Soto as a defendant in this action alleging that Soto assaulted him.   He also refers to two unidentifiable inmates (STG gang members) as defendants. Plaintiff cannot succeed in stating a claim against other inmates in this § 1983 case because inmates are not state actors. Therefore, Ramon Soto and the two unnamed inmates must be dismissed as defendants from this case.

**B.      <u>Excessive Force -- Eighth Amendment Claim</u>**

"The objective component of an Eighth Amendment claim is . . . contextual and responsive to contemporary standards of decency."   <u>Hudson v. McMillian</u>, 503 U.S. 1, 8 (1992) (internal quotation marks and citations omitted).   The malicious and sadistic use of force to cause harm always violates contemporary standards of decency, regardless of whether or not significant injury is evident.   <u>Id.</u> at 9; <u>see</u> <u>also</u> <u>Oliver v. Keller</u>, 289 F.3d 623, 628 (9th Cir. 2002) (Eighth Amendment excessive force standard examines *de minimis* uses of force, not *de minimis* injuries)).   "[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and

sadistically to cause harm." Id. at 7. "In determining whether the use of force was wanton and unnecessary, it may also be proper to evaluate the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." Id. (internal quotation marks and citations omitted). "The absence of serious injury is . . . relevant to the Eighth Amendment inquiry, but does not end it." Id.

The court finds that Plaintiff states an excessive force claim against defendant J. Garcia for the alleged excessive use of a pepper spray grenade and for allegedly instigating and directing the attack on Plaintiff by inmate Soto. J. Garcia's conduct -- directing inmate Soto to attack Plaintiff -- is an act of excessive force against Plaintiff using inmate Soto as a weapon. Therefore, the court finds that Plaintiff state claims for excessive force against defendant J. Garcia.

## C.  Americans with Disabilities Act (ADA) Claim

To the extent that Plaintiff seeks to bring an ADA claim, Plaintiff fails to state a claim. "To establish a violation of Title II of the ADA, a plaintiff must show that (1) [he] is a qualified individual with a disability; (2) [he] was excluded from participation in or otherwise discriminated against with regard to a public entity's services, programs, or activities; and (3) such exclusion or discrimination was by reason of [his] disability." Lovell v. Chandler, 303 F.3d 1039, 1052 (9th Cir. 2002). Monetary damages are not available under Title II of the ADA absent a showing of discriminatory intent. See Ferguson v. City of Phoenix, 157 F.3d 668, 674 (9th Cir. 1998). To show discriminatory intent, a plaintiff must establish deliberate indifference by the public entity. Duvall v. County of Kitsap, 260 F.3d 1124, 1138 (9th Cir. 2001).

Plaintiff has sufficiently established that he is disabled within the definition of the ADA. However, Plaintiff has not alleged facts showing that he was denied a specific service, program, or activity based upon that disability, nor has he alleged facts showing discriminatory intent in excluding Plaintiff from participation in a program, service, or activity. Therefore, Plaintiff fails to state a claim for violation of the ADA.

///

///

### D.     <u>Medical and Mental Health Care – Eighth Amendment Claim</u>

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" <u>Jett v. Penner</u>, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976)).  The two-part test for deliberate indifference requires the plaintiff to show (1) "'a serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." <u>Jett</u>, 439 F.3d at 1096 (quoting <u>McGuckin v. Smith</u>, 974 F.2d 1050, 1059 (9th Cir. 1992), <u>overruled</u> <u>on</u> <u>other</u> <u>grounds</u> <u>by</u> <u>WMX Techs., Inc. v. Miller</u>, 104 F.3d 1133, 1136 (9th Cir. 1997) (*en banc*) (internal quotations omitted)).  Deliberate indifference is shown by "a purposeful act or failure to respond to a prisoner's pain or possible medical need, and harm caused by the indifference." <u>Id.</u> (citing <u>McGuckin</u>, 974 F.2d at 1060).  Deliberate indifference may be manifested "when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." <u>Id.</u>

This principle extends to an inmate's mental-health-care needs. <u>Smith v. Jenkins</u>, 919 F.2d 90, 92–93 (8th Cir. 1990).  Deliberate indifference by prison personnel to an inmate's serious mental-health-care-needs violates the inmate's Eighth Amendment right to be free from cruel and unusual punishment. <u>Id.</u>  Deliberate indifference is shown by "a purposeful act or failure to respond to a prisoner's pain or possible medical need, and harm caused by the indifference." <u>Jett</u>, 439 F.3d at 1096 (citing <u>McGuckin</u>, 974 F.2d at 1060).  In order to state a claim for violation of the Eighth Amendment, a plaintiff must allege sufficient facts to support a claim that the named defendants "[knew] of and disregard[ed] an excessive risk to [plaintiff's] health...." <u>Farmer v. Brennan</u>, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).

In applying this standard, the Ninth Circuit has held that before it can be said that a prisoner's civil rights have been abridged, "the indifference to his medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." <u>Broughton v. Cutter Laboratories</u>, 622 F.2d 458, 460 (9th Cir.1980) (citing <u>Estelle</u>, 429 U.S. at 105–06).

13

Plaintiff alleges that it was apparent that he was in a distressed mental state and stated that he was homicidal and suicidal, but Defendants Dozer and Harmon did not call for mental health providers to evaluate/treat Plaintiff but instead dragged Plaintiff into his cell and closed the door.  Here, Plaintiff has not alleged facts showing that either of the defendants knew and understood that Plaintiff had a serious medical or mental health care need which was an excessive risk to Plaintiff's health, yet ignored it or acted unreasonably under the circumstances.

Therefore, Plaintiff fails to state a cognizable claim for inadequate medical or mental health care under the Eighth Amendment.

### E.    Equal Protection Clause

The Equal Protection Clause requires the State to treat all similarly situated people equally. See City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). This does not mean, however, that all prisoners must receive identical treatment and resources. See Cruz v. Beto, 405 U.S. 319, 322 n. 2 (1972); Ward v. Walsh, 1 F.3d 873, 880 (9th Cir. 1993); Allen v. Toombs, 827 F.2d 563, 568–69 (9th Cir. 1987).

"To prevail on an Equal Protection claim brought under § 1983, Plaintiff must allege facts plausibly showing that '"the defendants acted with an intent or purpose to discriminate against [them] based upon membership in a protected class,"'" (citing see Thornton v. City of St. Helens, 425 F.3d 1158, 1166 (9th Cir. 2005) (quoting Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001)), or that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose, Engquist v. Oregon Department of Agr., 553 U.S. 591, 601-02, 128 S.Ct. 2146 (2008); Village of Willowbrook v. Olech, 528 U.S. 562, 564, 120 S.Ct. 1073 (2000); Lazy Y Ranch Ltd. v. Behrens, 546 F.3d 580, 592 (9th Cir. 2008); North Pacifica LLC v. City of Pacifica, 526 F.3d 478, 486 (9th Cir. 2008).

Plaintiff has not alleged facts demonstrating that he was intentionally discriminated against on the basis of his membership in a protected class, or that he was intentionally treated differently than other similarly situated inmates without a rational relationship to a legitimate state purpose.  Plaintiff has not shown that he is part of a protected class for purposes of equal protection.  Plaintiff is part of a group of inmates with sensitive commitment offenses, but his

14

membership in that group does not make him part of a protected or "suspect" class.   The traditional "suspect classifications" encompassed by the Equal Protection Clause include race, gender, alienage, and national origin. See Short v. Brown, 893 F.3d 671, 679 (9th Cir. 2018).

Further, Plaintiff has not shown that as an inmate with a sensitive commitment offense, he was part of a group of similarly situated individuals who were intentionally treated differently without a rational relationship to a legitimate state purpose.

Therefore, Plaintiff fails to state a claim for relief for violation of his right to equal protection.

### F.   **Failure to Protect**

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement.  Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006).  Although prison conditions may be restrictive and harsh, prison officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety.  Farmer, 511 U.S. at 832-33 (internal citations and quotations omitted).  Prison officials have a duty to take reasonable steps to protect inmates from physical abuse.  Id. at 833; Hearns v. Terhune, 413 F.3d 1036, 1040 (9th Cir. 2005).  The failure of prison officials to protect inmates from attacks by other inmates may rise to the level of an Eighth Amendment violation where prison officials know of and disregard a substantial risk of serious harm to the plaintiff.  E.g., Farmer, 511 U.S. at 847; Hearns, 413 F.3d at 1040.

To establish a violation of this duty, the prisoner must establish that prison officials were "deliberately indifferent to a serious threat to the inmate's safety." Farmer, 511 U.S. at 834.  The question under the Eighth Amendment is whether prison officials, acting with deliberate indifference, exposed a prisoner to a sufficiently "substantial risk of serious harm" to his future health. Id. at 843 (citing Helling v. McKinney, 509 U.S. 25, 35 (1993)).  The Supreme Court has explained that "deliberate indifference entails something more than mere negligence . . . [but] something less than acts or omissions for the very purpose of causing harm or with the knowledge that harm will result."  Farmer, 511 U.S. at 835. The Court defined this "deliberate indifference" ///

standard as equal to "recklessness," in which "a person disregards a risk of harm of which he is aware." Id. at 836-37.

The deliberate indifference standard involves both an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious." Id. at 834. Second, subjectively, the prison official must "know of and disregard an excessive risk to inmate health or safety." Id. at 837; Anderson v. County of Kern, 45 F.3d 1310, 1313 (9th Cir. 1995). To prove knowledge of the risk, however, the prisoner may rely on circumstantial evidence; in fact, the very obviousness of the risk may be sufficient to establish knowledge. Farmer, 511 U.S. at 842; Wallis v. Baldwin, 70 F.3d 1074, 1077 (9th Cir. 1995).

Plaintiff alleges that he heard defendant J. Garcia direct inmate Soto to attack Plaintiff, and Soto attacked Plaintiff exclaiming, "This is from F. Garcia, his family, J. Garcia, i.e., son/brother, for Plaintiff being an informant, snitch, sensitive commitment offense offender." (ECF No. 34 at 12:7-9.)  Based on these allegations the court finds that Plaintiff states a claim against defendant J. Garcia for failing to protect Plaintiff from an attack by inmate Soto. Therefore, Plaintiff states a cognizable claim against defendant J. Garcia for failure to protect him under the Eighth Amendment.

**G.    Retaliation**

"Prisoners have a First Amendment right to file grievances [and lawsuits] against prison officials and to be free from retaliation for doing so." Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012) (citing Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009)).  "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).  To state a cognizable retaliation claim, Plaintiff must establish a nexus between the retaliatory act and the protected activity. Grenning v. Klemme, 34 F.Supp.3d 1144, 1153 (E.D. Wash. 2014).  The prisoner must submit evidence to establish a link between the exercise of constitutional rights and the allegedly

retaliatory action. Compare Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995) (finding insufficient evidence), with Valandingham v. Bojorquez, 866 F.2d 1135, 1138-39 (9th Cir. 1989) (finding sufficient evidence).

Plaintiff alleges that Defendant J. Garcia conspired to harm Plaintiff in retaliation for Plaintiff pursuing litigation against F. Garcia. Plaintiff also alleges that Defendant J. Garcia retaliated against him by issuing a false evidence report charging Plaintiff with battery resulting in 365 days of retaliatory false imprisonment. These allegations are conclusory and there are no facts showing a causal nexus between Plaintiff's litigation and J. Garcia's conspiracy. Plaintiff also fails to show that J. Garcia filed the false report because of any protected conduct by Plaintiff. Further, Plaintiff fails to demonstrate a causal nexus between the alleged retaliation and any constitutionally protected activity showing that the retaliatory act was done *because* of the protected activity. Therefore, Plaintiff fails to state a cognizable retaliation claim.

### H. Conspiracy

Plaintiff alleges that defendants J. Garcia, F. Garcia, and inmate Soto conspired together to murder Plaintiff; that defendants Harmon, J. Garcia, and C-Facility gang members conspired to disclose Plaintiff's sensitive commitment offense in an attempt to facilitate Plaintiff's murder; that defendant Sgt. Stane directed defendant Harmon to conspire and cause a conflict in Bldg. C-4 in Plaintiff's cell while Plaintiff was being interviewed by Sgt. Stane.

Conspiracy under § 1983 requires proof of "an agreement or meeting of the minds to violate constitutional rights," Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2002) (internal quotation marks omitted) (quoting United Steelworkers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1540-41 (9th Cir. 1989)), and that an "'actual deprivation of his constitutional rights resulted from the alleged conspiracy,'" Hart v. Parks, 450 F.3d 1059, 1071 (9th Cir. 2006) (quoting Woodrum v. Woodward County, 866 F.2d 1121, 1126 (9th Cir. 1989) ). "'To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy.'" Franklin, 312 F.3d at 441 (quoting United Steelworkers, 865 F.2d at 1541). A plaintiff must allege facts with sufficient particularity to show an agreement or a meeting of the minds to violate the plaintiff's constitutional rights.

1  Miller v. Cal. Dep't of Soc. Servs., 355 F.3d 1172, 1177 n.3 (9th Cir. 2004) (citing Woodrum,

2  866 F.2d at 1126).  The mere statement that defendants "conspired" or acted "in retaliation" is

3  not sufficient to state a claim.  "Threadbare recitals of the elements of a cause of action, supported

4  by mere conclusory statements, do not suffice."  Iqbal, 556 U.S. at 678 (citing Twombly, 550

5  U.S. at 555).

6          The Ninth Circuit requires a plaintiff alleging a conspiracy to violate civil rights to "state

7  specific facts to support the existence of the claimed conspiracy."  Olsen v. Idaho State Bd. of

8  Med., 363 F.3d 916, 929 (9th Cir. 2004) (citation and internal quotation marks omitted)

9  (discussing conspiracy claim under § 1985); Burns v. County of King, 883 F.2d 819, 821 (9th

10  Cir. 1989) ("To state a claim for conspiracy to violate one's constitutional rights under section

11  1983, the plaintiff must state specific facts to support the existence of the claimed conspiracy."

12  (citation omitted) ).

13          The court finds that Plaintiff states a cognizable claim for conspiracy against defendant

14  J. Garcia, but not against any other defendant.  Plaintiff's allegations of conspiracy under § 1983

15  against defendants other than J. Garcia fails to state a claim because his allegations are conclusory

16  and merely speculative. Though he uses phrases like "agreement" and "conspiracy," he does not

17  provide specific facts showing that any defendant, except J. Garcia, had an agreement to violate

18  Plaintiff's constitutional rights.  Plaintiff's claim that defendants F. Garcia and J. Garcia

19  conspired with inmate Soto to murder Plaintiff is particularly tenuous since F. Garcia and J.

20  Garcia worked at different prisons.  Therefore, Plaintiff states a claim for conspiracy against

21  defendant J. Garcia but not against any other defendant.

22          I.     **State Law Claims**

23          Plaintiff brings claims for violation of the hate crime statute Penal Code § 422.6(a) and

24  the Bane Federal Civil Rights Statute § 52.1.  Plaintiff also alleges that Defendant J. Garcia and

25  inmate Soto intentionally inflicted emotional distress on Plaintiff.

26          These are state law claims.  Violation of state tort law, state regulations, rules and policies

27  of the CDCR, or other state law is not sufficient to state a claim for relief under § 1983.  Section

28  1983 does not provide a cause of action for violations of state law.  See Galen v. Cnty. of Los

<u>Angeles</u>, 477 F.3d 652, 662 (9th Cir. 2007).  To state a claim under § 1983, there must be a deprivation of federal constitutional or statutory rights.  <u>See</u> <u>Paul v. Davis</u>, 424 U.S. 693 (1976); <u>also</u> <u>see</u> <u>Buckley v. City of Redding</u>, 66 F.3d 188, 190 (9th Cir. 1995); <u>Gonzaga University v. Doe</u>, 536 U.S. 273, 279 (2002).  Although the court may exercise supplemental jurisdiction over state law claims, Plaintiff must first have a cognizable claim for relief under federal law.  <u>See</u> 28 U.S.C. § 1367.

Plaintiff alleges in the Second Amended Complaint that he has complied with the Government Claims Act, which requires exhaustion of state law claims with California's Victim Compensation and Government Claims Board.  <u>Shirk v. Vista Unified Sch. Dist.</u>, 42 Cal.4th 201, 208-09 (Cal. 2007); <u>State v. Superior Court of Kings Cnty. (Bodde)</u>, 32 Cal.4th 1234, 1239 (Cal. 2004); <u>Mabe v. San Bernardino Cnty. Dep't of Pub. Soc. Servs.</u>, 237 F.3d 1101, 1111 (9th Cir. 2001); <u>Mangold v. California Pub. Utils. Comm'n</u>, 67 F.3d 1470, 1477 (9th Cir. 1995); <u>Karim-Panahi v. Los Angeles Police Dept.</u>, 839 F.2d 621, 627 (9th Cir. 1988).  Plaintiff is required to specifically allege compliance in his complaint.  <u>Id.</u>  Plaintiff states that "on December 11, 2018, within six months of this instant Complaint claims incident i.e., June 7, 2018 & June 27, 2018, (& continuing violations)," mailed a claim to the Victim's Compensation and Govt. Claims Board, "covering most of the instant Federal Complaint State Law claims."  (ECF No. 34 at 19.) Plaintiff has attached a copy of his claim to  the First Amended Complaint filed on August 27, 2020.  (ECF No. 31 at 24-26.)  However, the California Dept. of General Services letter to Plaintiff dated April 4, 2019, advised Plaintiff that his claim, submitted on January 2, 2019, was denied because he submitted a late claim failing to meet the requirements of Government Code section 911.6.  (<u>Id.</u>)  Plaintiff was advised:

> Your recourse, should you wish to pursue the matter further, is to file a petition in court for relief from the requirement of Government Code Section 945.4.  You will have six months from the date of this notice to file a petition.  If the courts grant the petition, you will have 30 days from the date the petition is granted to file suit on the cause of action to which this claim relates.

(ECF No. 31 at 24).

Plaintiff has not alleged that he filed a petition in court for relief from the requirement of Government Code Section 945.4 that was granted.  Therefore, Plaintiff's state law claims in this case fail.

**J.     Relief Requested**

Besides monetary damages, Plaintiff requests injunctive relief, declaratory relief, attorney's fees, and costs of suit.

Plaintiff requests a court order for defendants R. Diaz, C. Pfeiffer, and their agents to expunge Plaintiff's disciplinary conviction from his prison record and restore all of the 365 days of credits he forfeited.  This relief is not available in a § 1983 case such as this one.  Plaintiff's only remedy is to file a habeas corpus petition.

As for declaratory relief, such request should be denied because it is subsumed by Plaintiff's damages claim. See Rhodes, 408 F.3d at 565-66 n.8 (because claim for damages entails determination of whether officers' alleged conduct violated plaintiff's rights, the separate request for declaratory relief is subsumed by damages action); see also Fitzpatrick v. Gates, No. CV 00-4191-GAF (AJWx), 2001 WL 630534, at *5 (C.D. Cal. Apr. 18, 2001) ("Where a plaintiff seeks damages or relief for an alleged constitutional injury that has already occurred declaratory relief generally is inappropriate[.]")

With regard to attorney's fees, "[i]n any action or proceeding to enforce a provision of section[] 1983. . . , the court, in its discretion, may allow the prevailing party. . . reasonable attorney's fees. . . ."  42 U.S.C. § 1988(b).  Plaintiff's contention that he is entitled to attorney's fees if he prevails is without merit.  Plaintiff is representing himself in this action.  Because Plaintiff is not represented by an attorney, he is not entitled to recover attorney's fees if he prevails.  See Friedman v. Arizona, 912 F.2d 328, 333 n.2 (9th Cir. 1990), superseded by statute as stated in Warsoldier v. Woodford, 418 F.3d 989 (9th Cir. 2005); Gonzalez v. Kangas, 814 F.2d 1411, 1412 (9th Cir. 1987); see also Rickley v. Cnty. of Los Angeles, 654 F.3d 950, 954 (9th Cir. 2011) ("The Court accordingly adopted a per se rule, categorically precluding an award of attorney's fees under § 1988 to a pro se attorney-plaintiff.")

///

Therefore, Plaintiff is not entitled to declaratory relief, expungement of his disciplinary record,  nor attorney's fees even if he prevails in this action.  Based on the nature of the claims at issue in this action, which involve past conduct, Plaintiff is also not entitled to injunctive relief and is therefore confined to seeking money damages for the violations of his federal rights.

## V.    CONCLUSION AND RECOMMENDATIONS

For the reasons set forth above, the court finds that Plaintiff states cognizable claims in the Second Amended Complaint against defendant J. Garcia for use of excessive force and failure to protect Plaintiff in violation of the Eighth Amendment, and for conspiracy, but no other claims against any Defendant.  Under Rule 15(a) of the Federal Rules of Civil Procedure, "[t]he court should freely give leave to amend when justice so requires."  Here, the court is persuaded that Plaintiff is unable to allege any facts, based upon the circumstances he challenges, that would state a cognizable claim under section 1983.  "A district court may deny leave to amend when amendment would be futile."  Hartmann v. CDCR, 707 F.3d 1114, 1130 (9th Cir. 2013).  Plaintiff has now filed three complaints in this action, with the benefit of ample guidance from the court, and Plaintiff has now stated three cognizable claims upon which he can proceed.  The court finds that the deficiencies outlined above are not capable of being cured by amendment, and therefore further leave to amend should not be granted.  28 U.S.C. § 1915(e)(2)(B)(ii); Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000).

Accordingly, **IT IS HEREBY RECOMMENDED** that:

1.    This case proceed with Plaintiff's Second Amended Complaint, filed on September 8, 2020, against defendant J. Garcia for use of excessive force and failure to protect Plaintiff, in violation of the Eighth Amendment, and for conspiracy, but no other claims against any of the Defendants;

2.    Plaintiff's claims for retaliation, violation of equal protection, violation of the ADA, , inadequate medical care and state law claims, be dismissed based on Plaintiff's failure to state a claim;

3.    Defendants C/O J. Harmon, C/O D. Dozer, Sergeant B. Stane, Lieutenant A. Sotelo, Warden C. Pfeiffer, C/O F. Garcia (father of C/O J. Garcia), S. Kernan

(CDCR Secretary), R. Soto (inmate), and Ralph Diaz (CDCR Secretary) be dismissed for Plaintiff's failure to state any claims against them; and

4.      This case be referred back to the Magistrate Judge for further proceedings, including initiation of service of process.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within **fourteen days** after the date of service of these findings and recommendations, Plaintiff may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may result in waiver of the right to appeal the district court's order.  Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. Nov. 18, 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **March 13, 2021**                          **/s/ Gary S. Austin**
                                        UNITED STATES MAGISTRATE JUDGE