UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JERRY DILLINGHAM, | **1:19-cv-00461-AWI-GSA-PC** |
| Plaintiff, | **ORDER VACATING MOTION FOR SUMMARY JUDGMENT, TO BE REINSTATED FOLLOWING EVIDENTIARY HEARING** |
| vs. | |
| J. GARCIA, et al., | **(ECF No. 74.)** |
| Defendants. | |

## I.    INTRODUCTION

Jerry Dillingham ("Plaintiff") is a former state prisoner proceeding *pro se* and *in forma pauperis* with this civil rights action pursuant to 42 U.S.C. § 1983.  On April 9, 2019, Plaintiff filed the Complaint commencing this action.  (ECF No. 1.)

Pending before the Court is Defendant's motion for summary judgment on the ground that Plaintiff failed to exhaust administrative remedies before filing suit.  (ECF No. 74.) Alternatively, Defendant requests an evidentiary hearing as to any disputed factual issues.  (Id.)

For the reasons stated herein, the undersigned shall order an evidentiary hearing.  See Albino v. Baca, 747 F.3d 1162, 1171 (9th Cir. 2014) (court shall hold an evidentiary hearing to decide disputed factual questions relevant to administrative exhaustion).

**II.      PLAINTIFF'S CLAIMS**

This case now proceeds with Plaintiff's Second Amended Complaint filed on September 8, 2020, against defendant Correctional Officer J. Garcia ("Defendant") for conspiracy, use of excessive force and failure to protect in violation of the Eighth Amendment. (ECF No. 34.)   The events at issue in the Second Amended Complaint allegedly took place at Kern Valley State Prison (KVSP) when Plaintiff was incarcerated there.

Plaintiff alleges that on June 12, 2018, while walking across the yard to a medical appointment, he saw Defendant C/O J. Garcia, who was escorting ten or more unhandcuffed gang members returning from recreation.  Defendant Garcia conspired with inmate gang member Soto, directing Soto to attack Plaintiff.  Soto attacked Plaintiff from behind and severely injured Plaintiff.

**III.     SUMMARY JUDGMENT BASED ON EXHAUSTION**

        **A.      Legal Standards**

                **1.      Statutory Exhaustion Requirement**

Section 1997e(a) of the Prison Litigation Reform Act of 1995 (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  Prisoners are required to exhaust the available administrative remedies prior to filing suit. Jones v. Bock, 549 U.S. 199, 211, 127 S.Ct. 910, 918-19 (2007); McKinney v. Carey, 311 F.3d 1198, 1199-1201 (9th Cir. 2002).  However, a prisoner who has fully complied with the PLRA's exhaustion requirement before filing an amended complaint need not file an entirely new federal case simply because they had not exhausted when they filed their original federal complaint. Jackson v. Fong, 870 F.3d 928 (9th Cir. 2017); accord Saddozai v. Davis, 35 F.4th 705, 2022 WL 1613616 (9th Cir. May 23, 2022.)  Exhaustion is required regardless of the relief sought by the prisoner and

regardless of the relief offered by the process, <u>Booth v. Churner</u>, 532 U.S. 731, 741, 121 S.Ct. 1819 (2001), and the exhaustion requirement applies to all prisoner suits relating to prison life, <u>Porter v. Nussle</u>, 534 U.S. 516, 532, 122 S.Ct. 983, 993 (2002).

"[T]o properly exhaust administrative remedies prisoners 'must complete the administrative review process in accordance with the applicable procedural rules,' [ ]—rules that are defined not by the PLRA, but by the prison grievance process itself." <u>Bock</u>, 549 U.S. at 218 (quoting <u>Woodford v. Ngo</u>, 548 U.S. 81, 88, 126 S.Ct. 2378, 2386, 165 L.Ed.2d 368 (2006)). <u>See also Marella v. Terhune</u>, 568 F.3d 1024, 1027 (9th Cir. 2009) ("The California prison system's requirements 'define the boundaries of proper exhaustion.'"). An untimely or otherwise procedurally defective appeal will not satisfy the exhaustion requirement. <u>Woodford</u>, 548 U.S. at 90. However, the Ninth Circuit has made clear: A grievance need not include legal terminology or legal theories unless they are in some way needed to provide notice of the harm being grieved. <u>Griffin v. Arpaio</u>, 557 F.3d 1117, 1120 (9th Cir. 2009). A grievance also need not contain every fact necessary to prove each element of an eventual legal claim. <u>Id.</u>

Moreover, the Ninth Circuit has recognized that a grievance suffices to exhaust a claim if it puts the prison on adequate notice of the problem for which the prisoner seeks redress. To provide adequate notice, the prisoner need only provide the level of detail required by the prison's regulations. <u>Sapp v. Kimbrell</u>, 623 F.3d 813, 824 (9th Cir. 2010) (citing <u>Bock</u>, 549 U.S. at 218). The primary purpose of a grievance is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation. <u>Id</u>; <u>Griffin</u>, 557 F.3d at 1120; <u>see also</u> <u>Bock,</u> 549 U.S. at 219 (citing <u>Johnson v. Johnson</u>, 385 F.3d 503, 522 (5th Cir. 2004) ("We are mindful that the primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that they may be sued; the grievance process is not a summons and complaint that initiates adversarial litigation."). Thus, in this case, the grievance process used at Kern Valley State Prison where Plaintiff was incarcerated defines the boundaries of proper exhaustion.

A prisoner may be excused from complying with the PLRA's exhaustion requirement if they establish that the existing administrative remedies were effectively unavailable to them. <u>See</u>

1    Albino, 747 F.3d at 1172-73). When an inmate's administrative grievance is improperly rejected

2    on procedural grounds, exhaustion may be excused as "effectively unavailable." Sapp, 623 F.3d

3    at 823; see also Nunez v. Duncan, 591 F.3d 1217, 1224–26 (9th Cir. 2010) (warden's mistake

4    rendered prisoner's administrative remedies "effectively unavailable"); Ward v. Chavez, 678

5    F.3d 1042, 1044-45 (9th Cir. 2012) (exhaustion excused where futile); Brown v. Valoff, 422 F.3d

6    926, 940 (9th Cir. 2005) (plaintiff not required to proceed to third level where appeal granted at

7    second level and no further relief was available); Marella, 568 F.3d 1024 (excusing an inmate's

8    failure to exhaust because he did not have access to the necessary grievance forms to timely file

9    his grievance).  In such a case, "the inmate cannot pursue the necessary sequence of appeals."

10   Sapp, 623 F.3d at 823.

11        "A prisoner need not pursue exhaustion: (1) when the administrative procedure 'operates

12   as a simple dead end' because officers are 'unable or consistently unwilling to provide any relief

13   to aggrieved inmates'; (2) when the administrative scheme is 'so opaque that it becomes,

14   practically speaking, incapable of use' because 'no ordinary prisoner can discern or navigate it';

15   and (3) when prison administrators 'thwart inmates from taking advantage of a grievance process

16   thru machination, misrepresentation, or intimidation.'" Ross v. Blake, 136 S. Ct. 1850, 1859-60

17   (2016).

18        Under Ninth Circuit precedent, an inmate may be excused from the exhaustion

19   requirement when prison officials failed to process a properly filed grievance. See Andres v.

20   Marshall, 867 F.3d 1103, 1078 (9th Cir. 2017); see also Albino, 747 F.3d at 1033; Sapp, 623

21   F.3d at 823.  Under Sapp, to fall within this exception, an inmate must establish, "(1) that he

22   actually filed a grievance or grievances that, if pursued through all levels of administrative

23   appeals, would have sufficed to exhaust the claim that he seeks to pursue in federal court, and

24   (2) that prison officials screened his grievance or grievances for reasons inconsistent with or

25   unsupported by applicable regulations." Sapp, 623 F.3d at 823-24.

26        Nor is an inmate excused from the exhaustion requirement where he alludes to a lost

27   grievance, without any further evidence. Walker v. Lovelle, No. C-08-0801-CRB, 2009 WL

28   1313221, at *2 (N.D. Cal. May 11, 2009); see also Rodgers v. Reynaga, No. CV-1-06-1083-JAT,

2009 WL 2985731, at *3 (E.D. Cal. Sept. 16, 2009) ("To grant Plaintiff an exception to the PLRA's demand for exhaustion based solely on Plaintiff's self-serving testimony that his grievance was surreptitiously destroyed by prison officials would completely undermine the rule."); Hendon v. Baroya, No. 1:05-cv-00838-OWW-SMS, 2007 WL 3034263, at *3 (E.D. Cal. Oct. 16, 2007) ("The vague assertion that grievances were filed is insufficient to make the requisite showing that exhaustion either occurred or was excused due to some form [of] conduct on the part of prison officials which prevented plaintiff from properly utilizing the appeals process.").

### 2. California Department of Corrections and Rehabilitation (CDCR) Administrative Grievance System

The Court takes judicial notice of the fact that the State of California provides its prisoners and parolees the right to appeal administratively "any policy, decision, action, condition, or omission by the department or its staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or her health, safety, or welfare." Cal. Code Regs. tit. 15, § 3084.1(a) (2017). The process is initiated by submitting a CDCR Form 602. Id. at § 3084.2(a) (2017).

On January 28, 2011, California prison regulations governing inmate grievances were revised. Cal.Code Regs. tit. 15, § 3084.7. Now inmates in California proceed through three levels of appeal to exhaust the appeal process: (1) formal written appeal on a CDC 602 inmate appeal form, (2) second level appeal to the institution head or designee, and (3) third level appeal to the Director of the California Department of Corrections and Rehabilitation ("CDCR"). Cal.Code Regs. tit. 15, § 3084.7. Under specific circumstances, the first level review may be bypassed. Id. The third level of review constitutes the decision of the Secretary of the CDCR and exhausts a prisoner's administrative remedies. See id. § 3084.7(d)(3).

Since 2008, medical appeals have been processed at the third level by the Office of Third Level Appeals for the California Correctional Health Care Services. A California prisoner is required to submit an inmate appeal at the appropriate level and proceed to the highest level of review available to them. Butler v. Adams, 397 F.3d 1181, 1183 (9th Cir. 2005); Bennett v. King,

293 F.3d 1096, 1098 (9th Cir. 2002). Since the 2011 revision, in submitting a grievance, an inmate is required to "list all staff members involved and shall describe their involvement in the issue." Cal.Code Regs. tit. 15, § 3084.2(a)(3).  Further, the inmate must "state all facts known and available to them regarding the issue being appealed at the time," and they must "describe the specific issue under appeal and the relief requested." Cal.Code Regs. tit. 15, § 3084.2(a)(4). Inmates now have thirty calendar days to submit their appeal from the occurrence of the event or decision being appealed, or "upon first having knowledge of the action or decision being appealed." Cal.Code Regs. tit. 15, § 3084.8(b).

At the time of the events giving rise to the present action in 2018, California prisoners were required to submit appeals within thirty calendar days of the event being appealed. Cal.Code Regs. tit. 15, § 3084.8(b).  The process was initiated by submission of the appeal to the first formal level.  Id. at § 3084.7(a).  Three levels of appeal were involved, including the first formal level, second formal level, and third formal level.  Id. at § 3084.7.  A final decision at the third level[1] of review satisfied the exhaustion requirement under 42 U.S.C. § 1997e(a).  Id. at § 3084.7(d)(3); see Lira v. Herrera, 427 F.3d 1164, 1166 (9th Cir. 2005).

Until June 1, 2020, when California Code of Regulations Title 15, sections 3084 through 3084.9 were repealed and replaced with renumbered and amended provisions at sections 3480 through 3487, California state prisoners were required to use this process to satisfy § 1997e(a) and exhaust their claims prior to filing suit.   Woodford, 548 U.S. at 85 (2006); McKinney, 311 F.3d. at 1199-1201.   A California prisoner is required to submit an inmate appeal at the appropriate level and proceed to the highest level of review available to them. Butler, 397 F.3d at 1183; Bennett, 293 F.3d at 1098.

### 3.      Motion for Summary Judgment for Failure to Exhaust

The failure to exhaust in compliance with section 1997e(a) is an affirmative defense under which defendants have the burden of raising and proving the absence of exhaustion.  Bock, 549 U.S. at 216; Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003).  On April 3, 2014, the Ninth

---

[1] The third level is sometimes known as the Director's level.

1  Circuit issued a decision overruling Wyatt with respect to the proper procedural device for raising

2  the affirmative defense of exhaustion under § 1997e(a). Albino, 747 F.3d at 1168–69. Following

3  the decision in Albino, defendants may raise exhaustion deficiencies as an affirmative defense

4  under § 1997e(a) in either (1) a motion to dismiss pursuant to Rule 12(b)(6)[2] or (2) a motion for

5  summary judgment under Rule 56. Id. If the court concludes that Plaintiff has failed to exhaust,

6  the proper remedy is dismissal without prejudice of the portions of the complaint barred by §

7  1997e(e). Bock, 549 U.S. at 223–24; Lira, 427 F.3d at 1175–76.

8      Summary judgment is appropriate when it is demonstrated that there "is no genuine

9  dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.

10  R. Civ. P. 56(a); Albino, 747 F.3d at 1169 ("If there is a genuine dispute about material facts,

11  summary judgment will not be granted.") A party asserting that a fact cannot be disputed must

12  support the assertion by "citing to particular parts of materials in the record, including

13  depositions, documents, electronically stored information, affidavits or declarations, stipulations

14  (including those made for purposes of the motion only), admissions, interrogatory answers, or

15  other materials, or showing that the materials cited do not establish the absence or presence of a

16  genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."

17  Fed. R. Civ. P. 56(c)(1). In judging the evidence at the summary judgment stage, the court "must

18  draw all reasonable inferences in the light most favorable to the nonmoving party." Comite de

19  Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011). The

20  court must liberally construe Plaintiff's filings because he is a *pro se* prisoner. Thomas v. Ponder,

21  611 F.3d 1144, 1150 (9th Cir. 2010).

22      In a summary judgment motion for failure to exhaust administrative remedies, the

23  defendants have the initial burden to prove "that there was an available administrative remedy,

24  and that the prisoner did not exhaust that available remedy." Albino, 747 F.3d at 1172. If the

25  defendants carry that burden, "the burden shifts to the prisoner to come forward with evidence

26  showing that there is something in their particular case that made the existing and generally

27

28      [2] Motions to dismiss under Rule 12(b)(6) are only appropriate "[i]n the rare event a failure to exhaust is clear on the face of the complaint." Albino, 747 F.3d at 1162.

1  available administrative remedies effectively unavailable to them." Id.  The ultimate burden of

2  proof remains with defendants, however. Id.  "If material facts are disputed, summary judgment

3  should be denied, and the district judge rather than a jury should determine the facts." Id. at

4  1166.

5  **IV.     DISCUSSION**

6           **A.     Plaintiff's Evidence of Administrative Exhaustion**

7              In opposition to Defendant's motion for summary judgment, Plaintiff argues that he

8  exhausted his administrative remedies for his claims in this case with Appeal Log No. KVSP-0-

9  18-02112.

10             In his verified original complaint, Plaintiff alleges that on July 10, 2018, he submitted an

11  appeal to the KVSP Appeals Coordinator Office (IAO), notifying the prison about the alleged

12  assault that took place on June 12, 2018.  (ECF No. 1 at 14 ¶ 45.)  The appeal was assigned Log

13  no. KVSP-0-18-02112.  (Id.)  Due to not receiving a response, Plaintiff resubmitted a copy of the

14  appeal on July 22, 2018 with the original submission date.  (Id. ¶ 46.)  On July 27, 2018, the IAO

15  cancelled the appeal at the second level of review as untimely.  (Id. ¶ 47.)

16             In his declaration in opposition to the motion for summary judgment, Plaintiff declares

17  that he submitted a Form 22 dated July 10, 2018 with the 602 appeal Log no. KVSP-0-18-02112

18  attached, and a staff employee signed the Form 22 verifying custody of both documents and

19  verifying that the staff employee deposited both documents in the building's 602 appeals secure

20  mail box depository in an envelope addressed to the State's KVSP Appeals Coordinator Officials,

21  IAO. (Plaintiff's Declaration, ECF No. 93 at 7-8 ¶ 5 & Exhs. at pp. 10-11, 13.)  Plaintiff contends

22  that the staff employee's signature on the Form 22 verifies that a copy of appeal Log no. KVSP-

23  0-18-02112 was attached to the July 10, 2018 Form 22, verifying the appeal was initially timely

24  and procedurally submitted.  (Id. at 8 ¶ 8.)

25             After not receiving any notice of receipt of the attached appeal Log no. KVSP-0-18-02112

26  from the IAO, Plaintiff submitted another CDC Form 22 dated July 22, 2018.  (Id. at 8 ¶¶ 6, 7.)

27  Plaintiff declares that the July 22, 2018 Form 22 was signed by a staff employee verifying that

28  attached thereto was a copy of appeal Log no. KVSP-0-18-02112 and a copy of the July 10, 2018

Form 22.[3] (Id. at 8 ¶ 8.) On July 27, 018, IAO officials sent Plaintiff a screen out Form 695, informing Plaintiff that his attempt to exhaust any available administrative process was cancelled as untimely but nonetheless was "referred to the hiring authority for an inquiry into staff misconduct." (Id. at 8 ¶ 10 & Exh. at p. 12.) On February 27, 2019, Plaintiff was interviewed by S. Henderson, Associate Warden, KVSP. (Id. at 9 ¶ 13.) Mr. Henderson told Plaintiff, "[t]he Staff Complaint Confidential Inquiry in re (KVSP-0-18-02112) 602 claims was ("completed") & [Plaintiff] would not receive any generated inquiry findings documents actions taken details but for, they are confidential. This notice exhausts your administrative remedies." (Plaintiff's Declaration, ECF No. 93 at 9 ¶ 13 & Exh. 13.)

It appears therefore that Plaintiff is also contending that the Staff Complaint *Confidential Inquiry* also exhausted his administrative remedies. Moreover, Plaintiff alleges that after the appeal was cancelled the regular grievance process was not available, and the State used a separate confidential process to which Plaintiff was not privy to any findings nor the date of the completed final level inquiry. (2ACP, ECF No. 34 at 1, 2.)

## B. ANALYSIS

Summary judgment is appropriate when it is demonstrated that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Albino, 747 F.3d at 1169 ("If there is a genuine dispute about material facts, summary judgment will not be granted.")

### B.1 KVSP-0-18-02112 & KVSP-0-18-2241

The parties do not dispute that Plaintiff filed appeal log number KVSP-0-18-02112 regarding the alleged assaults against Plaintiff on June 12, 2018, which was received by the KVSP Appeals Coordinator Office (IAO) on July 22, 2018, and that the appeal was cancelled as untimely on July 27, 2018 at the second level of review. Defendant's motion for summary

---

[3] Plaintiff also declares that he attached a copy of the July 22, 2018 Form 22 to his declaration. (ECF No. 93 at 8 ¶ 7.) The Court finds no July 22, 2018 Form 22 attached to Plaintiff's declaration. However, Defendant has submitted a copy of the July 22, 2018 Form 22 as Exhibit B to the Declaration of A. Leyva. (Declaration of A. Leyva, ECF No. 74-4 ¶ 21 & Exh. B at p. 20.)

1   judgment addresses Plaintiff's claim that he timely submitted the appeal on July 10, 2018, but

2   when he did not receive notice of receipt of the appeal from the IAO, he resubmitted the appeal

3   on July 22, 2018.  For the following reasons, the undersigned finds that the issue of whether

4   Plaintiff timely submitted his appeal is a materially disputed fact.

5       Defendant argues that Plaintiff failed to exhaust his claims for this case because his

6   Appeal KVSP-0-18-2112 was properly cancelled, citing the following evidence:

7           Appeal Log Number KVSP-0-18-02112 was received by KVSP on July

8       25, 2018, and Plaintiff dated the appeal July 10, 2018.  (Leyva Decl., ECF No.

9       74-4 ¶ 17; Exhibit B.)  The allegations in Appeal Log Number KVSP-0-18-02112

10      are the same or similar as those set forth in the SAC.  (Id. ¶¶ 19-20; Exhibit B;

11      SAC.)

12          Accompanying  Appeal  Log  Number  KVSP-0-18-02112  were  two

13      separate CDCR form 22 sheets.  (Id. ¶¶ 21-23; Exhibit B.)  One form 22, dated

14      July 10, 2018, was purportedly signed by a staff member named "Melendrez."

15      (Id.) The second form 22, dated July 22, 2018, was purportedly signed by a staff

16      member named "Hernandez." (Id.)  In the form 22 dated July 22, 2018, Plaintiff

17      claimed he submitted the 602 appeal to Melendrez on July 10, 2018, but had not

18      yet received a response. (Id.)

19          During KVSP's review of Appeal Log Number KVSP-0-18-02112, and

20      the accompanying form 22 documents, this appeal was deemed untimely and

21      cancelled in accordance with the California Code of Regulations, Title 15,

22      sections 3084.8(a) and (b), because it was not received within 30 calendar days of

23      the underlying incident.  (Id. ¶ 24; Exhibit B; Cal. Code Regs. tit. 15, §§ 3084.8(a),

24      (b).)

25          Plaintiff appealed the cancellation of Appeal Log Number KVSP-0-18-

26      02112 by submitting Appeal Log Number KVSP-0-18-02241, received August 6,

27      2018.  (Id. ¶¶ 25-27; Exhibit C.)  Appeal Log Number KVSP-0-18-02241 was

28      rejected  on  two  occasions  due  to  Plaintiff's  failure  to  submit  necessary

attachments.  (Id.)  On August 25, 2018, Plaintiff resubmitted Appeal Log Number KVSP-0-18-02241 with the necessary documentation, which was accepted at the Second Level of Review.  (Id.)

The sole issue considered in Appeal Log Number KVSP-0-18-02241 was whether Appeal Log Number KVSP-0-18-02112 was cancelled in error and, if so, whether the sole remedy of accepting KVSP-0-18-02112 to address its merits was warranted.  (Id. ¶ 27; Exhibit D.)  During the review of Appeal Log Number KVSP-0-18-02241, it was discovered that the CDCR Form 22 purportedly signed by "Melendrez" was an altered copy of a form submitted previously in Appeal Log Number KVSP-0-18-01900.  (Id.)  The forgery and alteration of a previously-submitted form 22 was deemed misuse or abuse of the appeals process, as doing so was submitting "demonstrably false" information supporting the appeal.  (Id. ¶ 28; Exhibit D; Cal. Code Regs. tit. 15, § 3084.4(a)(3).)  Appeal Log Number KVSP-0-18-02241 was denied at the Second Level of Review on September 20, 2018.  (Id.)

Thus, Plaintiff argues that his appeal (KVSP-0-18-02112) should not have been cancelled because he has evidence of a signed Form 22 showing that he timely submitted the appeal on July 10, 2018.  In response, Defendant argues that Plaintiff's evidence is an altered and forged copy of a Form 22 submitted previously in another appeal.  This evidence is sufficient to create a triable dispute regarding whether Plaintiff submitted the initial grievance on time, thus this matter is referred for an evidentiary hearing to determine whether the CDCR Form 22 which Plaintiff claims was timely filed was in fact an altered copy of a form submitted in a previous appeal.

### B.2   CONFIDENTIAL INQUIRY

Pertaining to this analysis there are the following relevant documents: **1**- a CDCR document dated July 27, 2018 entitled, "Screening at the Second level" (ECF No. 93 at 12); **2**- a CDCR document dated September 20, 2018 entitled, "Appeal log #KVSP-0-18-02241 Second Level Response" (ECF No. 74-5); **3**- a CDCR document dated February 4, 2019 entitled "Third

Level Appeal Decision" (ECF No. 74-5 at 13); and finally, **4**- a CDCR document dated February 27, 2019, which contains the subject heading, "Letter Addressed to the Office of Internal Affairs Concerning a Staff Complaint" (ECF No. 93 at 14).  These documents are contained variously in the opposing motions dealing with the motion for summary judgment.

The Court shall take judicial notice under Rule 201(a) of the Federal Rules of Evidence of the four exhibits referenced above.  Facts subject to judicial notice are those which are "(1) generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  FED. R. EVID. 201(b).  A court may take judicial notice of records of state agencies and other undisputed matters of public record.  Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001); Mack v. S. Bay Beer Distribs., Inc., 798 F.2d 1279, 1282 (9th Cir. 1986) (permitting court to take judicial notice of records of state administrative bodies), overruled on other grounds by Astoria Fed. Sav. & Loan Ass'n v. Solimino, 501 U.S. 104, 111, 111 S. Ct. 2166, 115 L. Ed. 2d 96 (1991).  But a court may not take judicial notice of a matter that is in dispute.  Lee, 250 F.3d at 690.  The parties do not dispute the authenticity or accuracy of these exhibits, nor do they argue that the Court should not take notice of them for any reason.  Therefore, the Court takes judicial notice of the four exhibits as state administrative records that are properly subject to judicial notice. See Lee, 250 F.3d at 689; Mack, 798 F.2d at 1282.

In support of Plaintiff's argument that CDCR's referral of his 602 appeal (KVSP-0-18-02112) for an "inquiry" exhausted his administrative remedies, he first refers to the language in the above referenced July 27 CDCR document which states, in pertinent part, "*However, due to the nature of the appeal issue it has been referred to the hiring authority for an inquiry into staff misconduct*".  (ECF No. 93 at 12.)  Plaintiff then refers to an interview he had with Stephen Henderson, Associate Warden at KVSP, wherein Plaintiff declares that Henderson told him (Plaintiff), "the staff complaint confidential inquiry in re (KVSP-0-18-02112) 602 claims was ['completed'] & I would not receive any generated inquiry findings documents actions taken details but for, they are confidential.  This notice exhausts your administrative remedies."  Plaintiff also attaches to his opposition to defendants motion for summary judgment the above

referenced CDCR letter dated February 27, 2019, signed by Stephen Henderson, which in significant part states, "I noted staff complaint inquiry (KVSP-0-18-02112) was not referred to the OIA and was completed at KVSP".   OIA refers to CDCR's Office of Internal Affairs. Interestingly, this Feb. 27ᵗʰ letter **does not** contain the language "this notice exhausts your administrative remedies".

The CCR section applicable during the time frame of this case is found at 15 CCR 3084.9(i)(3), which states in pertinent part, "All appeals alleging staff misconduct will be presented by the appeals coordinator to the hiring authority…the hiring authority will review the complaint and determine if:… (B) The allegation does not warrant a request for an Internal Affairs investigation in which case a *confidential inquiry* shall be completed by the reviewer. An inquiry shall be conducted whenever the appeal is designated as a staff complaint but is not referred to the Office of Internal Affairs (OIA)…" (emphasis added).     Some courts within this Circuit have held that a prisoner's administrative remedies when pursuing a *staff complaint* appeal are exhausted when an OIA investigation is ordered based on the assertion that no further remedies remain available (see Beltran v Baker, 2021 US Dist Lexis 219512).  However, this is not the case when a staff complaint rather than being referred to the Office of Internal Affairs (OIA) is alternatively   referred for a *confidential inquiry*.  **Importantly**, when Plaintiff's allegations were investigated in the *Confidential Inquiry* process, this process did not interfere with Plaintiff pursuing and exhausting his administrative remedies relating to the incident of June 12, 2018, as set forth in KVSP-0-18-02112 and KVSP-0-18-02241, which were concluded at the CDCR Third Level of review.  The Third level of review resulted in a denial of Plaintiff's appeal and stated, "this decision exhausts the administrative remedy available to the appellant within CDCR". Plaintiff's appeals were therefore addressed at both the second and third levels of the administrative exhaustion process.  Of note, when a prisoner's grievance contains allegations of staff misconduct (Staff Complaint) it automatically bypasses the first level of review (see Fuentes v. Rodriquez, 2019 US Dist Lexis 85624; 15 CCR 3084.7(a)).  Of significance, the court in Fuentes stated, "the confidential inquiry is separate from the administrative grievance process and has no bearing on the PLRA's exhaustion requirement".

1    Therefore, Plaintiff's argument that the *confidential inquiry* exhausted his administrative

2 remedies is without merit and will not be part of the court's evidentiary hearing.

3 **V.    CONCLUSION AND ORDER**

4    The Court finds that,  based on the record before it, there is a genuine dispute of material

5 fact as to whether Plaintiff failed to exhaust his administrative remedies by allegedly  not filing

6 his initial appeal (KVSP -0-18-02112) within the requisite time period.  Accordingly, the Court

7 shall set an evidentiary hearing and Defendant's motion for summary judgment shall be vacated,

8 to be reinstated following the evidentiary hearing.

9    Based on the foregoing, **IT IS HEREBY ORDERED** that:

10    1.    By separate order, the Court shall schedule an evidentiary hearing; and

11    2.    Defendant's motion for summary judgment shall be vacated, to be reinstated

12        following the evidentiary hearing.

13

14 IT IS SO ORDERED.

15    Dated:    **November 7, 2022**                    **/s/ Gary S. Austin**
                                            UNITED STATES MAGISTRATE JUDGE
16

17

18

19

20

21

22

23

24

25

26

27

28